No.——

**First Circuit**

——

**BUSCH, SR., ET AL., v. SCIMECA**

——

(December 6, 1927. Opinion and Decree.)
(April 11, 1928. Opinion and Decree on Rehearing.)

——

(*Syllabus by the Editor*)

1. **Louisiana Digest—Automobiles—Par. 7, 7(b).**

Where one fails to "stop, look and listen" before crossing a highway on which there is constant automobile traffic she is contributorily negligent and cannot recover for the resulting injuries to herself.

REVERSED ON REHEARING

2. **Louisiana Digest—Automobiles—Par. 7.**

Where the evidence does not show that there was a failure of the person injured to use care and prudence in crossing the street and not to attempt to cross it without looking up and down the street for automobiles, there is no contributory negligence on her part proven.

3. **Louisiana Digest — Automobiles — Par. 4(c).**

One who drives an automobile on a street at thirty-five to forty miles an hour through considerable traffic and while pedestrians are crossing is negligent and liable for injuries inflicted to a girl while crossing the street.

4. **Louisiana Digest—Appeal—Par. 594, 625.**

The finding of the trial Judge on a question of fact is presumed to be correct and unless there is manifest error when the testimony is conflicting, it will be affirmed.

Appeal from the Parish of East Baton Rouge. Hon. Geo. K. Favrot, Judge.

Action by Louis Busch, Sr., et als. against Sam Scimeca.

There was judgment for plaintiff and defendant appealed.

On the original hearing the judgment was reversed, but on rehearing judgment was amended and affirmed.

Jess Johnson, of Baton Rouge, and Carbajal and Gaudin, of New Orleans, attorneys for plaintiff, appellant.

R. F. Walker, of Baton Rouge, attorney for defendant, appellee.

LECHE, J. The claim in this suit is for damages alleged to be due to the minor daughter of the plaintiff, as the result of injuries inflicted upon her person when struck by an automobile driven by the minor son of defendant. The District Judge rendered judgment in favor of plaintiff in the sum of Seven hundred fifty dollars for injury to the daughter and rejected plaintiff's personal claim for damages for loss of time and expenses.

Plaintiff has appealed and defendant, in answer to the appeal, prays that the judgment be reversed.

It is undisputed that defendant's son was driving an automobile which came in collision with Miss Rhea Busch, daughter of plaintiff, aged about fourteen years, on the continuation of North Street, near the eastern limit of the City of Baton Rouge, where the continuation of said street is known as the Greenwell Springs road. That the. accident happened in daylight, about 6 o'clock in the afternoon of July 10, 1926, and that Miss Busch was painfully injured and was slightly disfigured by blemishes to her face, resulting from small cuts and bruises. It is also undisputed that Miss Busch, in company with her brother and Mrs. A. A. Randolph was about to cross the street or road at a point near the street car line which extends across that street or road, when she stopped on the south side of the street on or near a bridge which spans the gutter, in order to make some alteration in her personal appearance. Miss Busch says she stopped to wipe off an excess of powder on her face, but the occupants of defendant's automobile say that she stooped down as if to tie her shoe or pull up her stocking. Mrs. Randolph and young Busch kept on going north across the street and while Miss Busch had thus stopped, or after she had started to cross the street to rejoin her companions, an automobile driven by defendant's son, aged about sixteen years, appeared on the road going in a westerly direction, towards the City of Baton Rouge, and it collided with Miss Busch, inflicting the injury for which compensatory damages are herein sued for.

All the testimony which has any bearing upon the question of negligence, is very conflicting. Defendant's contention, which is supported by testimony, is that Miss Busch was stooping down when the automobile approached the point where she wished to cross the street, that she raised her head and then started across without looking. That it was impossible to stop the automobile in time to avoid striking her, that the boy chauffeur first thinking that he could pass to the right of her position, steered to the right, that the young lady kept on advancing, and as he steered to the left, she hesitated and started back, and was struck by his left front fender.

The contention of the plaintiff, also supported by testimony, is that Miss Busch was standing near the bridge on the edge

of the street, that the boy driving the automobile was laughing and talking to his companions, and did not look where he was going, and deliberately steered his car to the left side of the road where Miss Busch was standing, struck her and ran over her.

The speed at which the defendant's automobile was being driven, as in most cases of this kind, at best, is mere guess work. According to plaintiff's witnesses it was very fast and according to defendant's witnesses it was very slow. It may be that plaintiff's witnesses are more worthy of belief, but on the other hand, considering the natural proclivity of human nature, and the ordinary rules by which men are guided, and using that as a standard, one is inclined to believe that the version of the accident advanced by defendant is more likely and probable, and if that version be accepted, then Miss Busch violated the well known rule "to stop, look and listen," before crossing a highway on which there is constant automobile traffic. It is almost incredible that defendant's son either purposely or maliciously steered his automobile to the left in order to run into and strike Miss Busch.

To justify a court of justice in accepting this as a proved fact, the evidence should be of a convincing nature.

Plaintiff has not proved his case with certainty and by a preponderance of evidence. His demand should be rejected, and it is so ordered.

---

### ON REHEARING

ELLIOTT, J. As our original opinion herein in effect stated, plaintiff contends that defendant's car was being driven westward along North Street in the City of Baton Rouge at a high rate of speed and in a reckless, careless and dangerous manner. That while his daughter, Miss Rhea Busch, was standing on the south side of North Street and just east of the street car tracks, which enter it from Duggan Street, cross and then leave it by way of Fryous Street, Nick Scimeca, defendant's son, with startling suddenness and quick as a flash, carelessly, without cause, and with wanton recklessness, turned and drove the automobile to his left, towards plaintiff's daughter, causing it to swoop upon and strike her. That it was because of the high speed, reckless, careless, imprudent and wanton manner in which the said Nick Scimeca was operating said automobile, that plaintiff's daughter was struck and injured. That there was no fault on her part, etc.

Defendant denied the negligent, fast, reckless and wanton driving alleged against his son, and alleges that the striking was caused by the acts of plaintiff's daughter in dashing in front of his son's automobile without looking to see if a car was coming, and at a time when it was impossible for his son to avoid striking her. Plaintiff's daughter and defendant's son are both minors. Plaintiff therefore sues in behalf of his daughter and defendant defends in behalf of his son. The evidence on the subject of negligence is conflicting, as stated in our original opinion, but upon looking into it again, we conclude that plaintiff's case is established with reasonable certainty.

The evidence shows, as stated in our original opinion that plaintiff's daughter, Miss Rhea, about fourteen years of age accompanied by her brother, Louis, about fifteen years old at the time, and Mrs. A. A. Randolph, a cousin, were walking on the south side of North Street and preparing to cross it just east of the street car tracks, which enter it from

Duggan Street, cross North Street, and then leave it by way of Fryous Street. North Street ends near this place, and thence continues on as the Greenwell Springs Road. The street is thickly populated and closely built up at this place with residences, stores, shops, garages, etc., and is in frequent use by automobiles and people on foot traversing and crossing it. Miss Busch stopped on the culvert which spans the gutter on the south side of the street a minute or so for the purpose of removing some powder from her face. This culvert is spoken of by the witnesses as a bridge. Mrs. Randolph and Louis Busch walked on, while she delayed, and when she started up and started to cross, her brother and cousin had gotten practically across the street. Miss Busch says in her testimony that as she stepped off the culvert and started to cross the street, she looked up the street and saw defendant's car coming, going west at a great speed. That she stopped where she was at the time for it to pass by. That as it came near her, it swerved toward her, and came on so fast that it hit her before she could move. According to the objects mentioned by her as being opposite the place where she first saw the car as it was coming, it was one hundred feet or more distant from the place where she was at the time. She estimated that she was some four or five feet out in the street at the time, but could not say exactly how far out she was. That she was standing still watching the car, and not her brother and cousin, and did not stoop down to fix her shoes or stockings. That the car could and would have missed her, had it not swerved towards her. That it knocked her about ten feet in front of it, and as she fell, it hit her again, knocking her about ten feet further. That the street was straight and unobstructed. That there was nothing in the street which interfered with defendant's son seeing her, etc. Her testimony is supported by Mrs. Randolph, Mrs. Hall, Mrs. Phelps, and in regard to the speed of the car, by Mr. Randolph. Her testimony is supported by Leon Raiford, except that he says she was not standing still when struck. He says that as the car came close to where she was, that she jumped back and attempted to dodge it, but in all other respects he agrees with her and the other witnesses above mentioned. That she was out in the street some five or six feet from the culvert, that the car coming in the middle of the street, swerved south and struck her. He estimated that the car was within five or six feet of her when it commenced to swerve; says that there was no obstruction in the street that made such a swerve necessary; that if it had not been swerved southward, she would not have been hit, as she jumped back far enough to escape, if it had not been swerved toward her; that the car seemed to be going fast, etc. Mrs. Randolph says that defendant's son was not looking at the road ahead of him, but had his face turned at the time toward his companion sitting in the car beside him, and was laughing. She further testified that on Saturday evening about 9 o'clock, after the occurrence, and after Miss Busch had been taken to the Lady of the Lake Sanitarium, that Sam Scimeca accompanied by two parties, one of whom he introduced to her as his brother-in-law, and whom she recognized on the trial as Joe Lece, came to the Sanitarium. That Sam Scimeca informed her that he was in Plaquemine at the time of the accident. That he had been notified of it by telephone, and had come to Baton Rouge immediately to see about it. That he told her not to spare any expense in regard to Miss Busch, that he would pay the bill, etc. That she asked the party with him if he had seen the occurrence, and he an-

swered that he had not. On the trial of the case she recognized the party who had so been introduced to her and had informed her at the time that he had not seen the occurrence, as Joe Lece. Joe Lece testifying as a witness for the defense, that he had seen the occurrence, etc., denied that he had gone to the Lady of the Lake Sanitarium with Sam Scimeca, and denied that he had stated to Mrs. Randolph in response to question by her, that he had not seen the occurrence. During his testimony he was asked if he knew Leon Raiford, witness for the plaintiff who had preceded him on the stand, etc.

"Q. Did you see this man the evening of the accident?
"A. No, sir. He didn't see it."

His answer in no wise responsive to any question previously asked him, indicates a certain mental course resolved on, and with which he was obsessed. Plaintiff's counsel informed him that he had not answered the question asked him, etc. He then stated that after seeing the occurrence himself that he had left the place, and on his way home had met Mr. Raiford coming to town, which, if true, would mean that Mr. Raiford had testified untruly in saying that he had seen the occurrence, etc. The witness Lece also says in one part of his testimony that plaintiff's daughter was in the middle of the street at the time she was struck, and in another place, that she was within four or five feet of the sidewalk at the time. Sam Scimeca says that he called at the sanitarium Sunday morning instead of Saturday night as claimed by Mrs. Randolph, and to support his denial, he tendered rebuttal evidence to show that he was in Plaquemine on Saturday night and was there on Sunday morning, and didn't know of the occurrence in question until Sunday morning, when he was arrested. The Court refused to permit him to introduce the evidence, and we do not therefore know what he might have proved, but the tender, had it been permitted and the offer made good, would have contradicted Nick Scimeca, his son, who had previously testified that his father did come back to Baton Rouge Saturday night, and was at home the night in question. He also attacks the testimony of Mrs. Phelps. After the case had been partly tried and the testimony of Mrs. Phelps and a number of others heard, court was adjourned for several days. In the interim, and before the trial was resumed, defendant called on Mrs. Phelps. He was asked by plaintiff's counsel:

"Q. Why did you go there?
"A. Because after I got the suit paid for, I was going around to see who knew about this wreck, so I went to the lady yonder. She told me that she saw this boy going sixty miles an hour and hit. the girl. Then I asked her if she was going to be a witness for these people. She told me she was in business, and 'I ain't going to witness for nobody.' After that she turned and told me, 'Who pays me the most I will witness for,' and I have got somebody to prove it.
"Q. Why did you go to Mrs. Phelps' house after the trial last week?
"A. Because she never told the truth.
"Q. Why did you go to Mrs. Phelps' house?
"A. Because she never told the truth.
"Q. Didn't you shake your finger in her face and threaten her?
"A. I said, 'Why didn't you tell. the truth like you did inside the store, etc."

Mrs. Phelps called in rebuttal, testified that . defendant called at her store after she had testified, shook his finger at her, and said: "You told me if I paid you, you wouldn't say nothing." That she told him he was a liar.

We are satisfied that the testimony of Mrs. Randolph, Mrs. Phelps and Leon Raiford was given sincerely. There are some differences in their statements, but the at-

tacks made on same have created in our mind an effect, the opposite thereby intended.

Nick Scimeca says that Miss Busch stopped to fix her shoes or stockings. That he slacked up when he saw her on the bridge. That when he got within ten or twelve feet of her, she ran across the road. That she saw him coming, and was nearly on the north side of the street. That she then tried to turn back to the south side. When she did, that he swerved his car to miss her. Then she turned back north, and he swerved his car to miss her again, and hit her. That he was going eighteen or twenty miles an hour at the time.

"Q. What did you do if anything, when you saw her cross the road?
"A. Slacked up. I see her on the bridge. When I got right up to her, she ran across the road. The left fender hit her in the center of the road and knocked her down."

After he had made it plain that after he had come up within ten or twelve feet of where Miss Busch was standing, he swerved his car first to one side and then to the other in his efforts to miss her, but that each time she had turned and placed herself in his way, and was at last hit, plaintiff's counsel asked him:

"Q. Can you swerve your car to the right, then swerve back to the left, and then back to the right again in ten feet?
"A. I didn't do all that.
"Q. What did you do?
"A. I told you what I did.
"Q. Well tell it again.
"A. I ain't going to do it."

Instructed by the Court to answer, he did so, but his answer was different from his previous statements on the subject. The questions had caused him to reflect on the difficulty of swerving a car, as he contends he did, going eighteen or twenty miles an hour while traversing a distance of ten or twelve feet. A number of witnesses testified as did defendant's son.

We are satisfied on reconsideration that defendant's car was being driven at the time and place in question at about thirty-five or forty miles an hour. The noise it made as a result of its speed, and the fact that it knocked Miss Busch some fifteen or twenty feet when it struck her, corroborates plaintiff's witnesses, that it was running at great speed. It was being run entirely too fast for the street it was on, at the place in question. It was not under control, therefore, its speed was reckless. We are moreover satisfied that defendant's son was not looking ahead in the direction he was running, and that he did not see plaintiff's daughter until his car got within ten or twelve feet of her. The effort he then made was of no more effect, at the speed he was running, than if none had been made. The street was straight. There was nothing in the street to prevent him seeing plaintiff's daughter. Therefore he should have seen her and would have seen her if he had been looking ahead, and on his guard. Plaintiff's daughter and some of his witnesses claim that she was standing still at the time she was struck. The witness Raiford says that she jumped back just before the car hit her. The defense witnesses testified on this subject as heretofore stated. It is likely that being frightened at the car bearing down on her, she did jump back. It was a natural impulse and she may have done it about the time defendant's son swerved his car, and she may have jumped in the direction in which he swerved. If she did, it was an involuntary act on her part to escape being run over as a result of the wrongdoing of defendant's son. It makes no difference, as

we see the case, whether she was standing still at the time, five or six feet in the street or walking across it. If defendant's car had been under control, and if his son had been looking ahead and on his guard, he would have seen her in time to have had his car under control and avoided running over her. Defendant's contention that plaintiff's daughter negligently dashed in front of his automobile, without looking to see if cars were coming on the street is not a proper conclusion from the facts and circumstances of the case. It was the duty of his daughter to use care and prudence in crossing the street and not to attempt to cross it without looking up and down the street for automobiles. The evidence does not show a failure on her part in that respect.

We think that the primary and governing cause of the injury to plaintiff's daughter was the reckless and uncontrolled speed of defendant's car while being driven on the street by defendant's son without looking ahead and without observing proper care, and that defendant is responsible for the harm thereby done.

The cases of Buryant vs. Wolfe, 126 La. Ann. 787, 52 So. 1025, and Albert vs. Munch, 144 La. 686, are applicable to the present situation.

The judgment appealed from is correct except as to the amount of damages. The necessary expenses of plaintiff at the Lady of the Lake Sanitarium, bills of physicians, nurses, druggists, etc., amount to $452.00. The sufferings of his daughter were intense and endured for three or four months, and she had not entirely recovered for nearly nine months after the occurrence. She had suffered as a result of her injuries a serious facial disfigurement. We have concluded that the amount allowed plaintiff on account of the injuries sustained by his daughter should be increased to $1,000.00, but that his other expenses claimed in his petition were properly rejected.

For these reasons our previous opinion and decree herein is finally set aside. The judgment appealed from is now re-instated and increased to $1,000.00 with legal interest thereon from March 2, 1927, until paid, and as thus amended, affirmed. Defendant to pay the costs in both courts.

---

## ON REHEARING

MOUTON, J. concurring. Nick Scimeca, the minor son of defendant, was driving the car that collided with the daughter of the plaintiff, and as a witness, gave his account of the occurrence. In concurring with the judgment rendered by Judge Elliott, I wish to refer to the testimony of Nick Scimeca when he testifies as to what occurred immediately before and at the time Miss Busch was struck by the auto he was driving. He saw her, he says, standing near the bridge "fixing something about her foot or shoe," that he drove about ten feet from her, and she then straightened up and started northward across the street; that he was then going ten or twelve miles an hour, and that he threw on his brakes; that as she swerved north he swerved his car in that direction; that she got excited, came back south, and that he swerved his car that way. Thereafter, he repeats that she turned twice, with only this difference, that he then says she first swerved to the south and then to the north. However, this may be, the fact remains according to the testimony of Nick, that when Miss Busch struck out in opposite directions, she was then only about ten or twelve feet in front of the auto. Nick also stated in his testimony, that a

car traveling at a speed of eighteen miles an hour can be stopped in ten or twelve feet.

It will be noted that he said, as we have above shown, that she was about ten or twelve feet ahead of his car when she started to cross the street and that he had applied his brakes. If he had been going, at the time, at the rate of ten or twelve miles an hour, and had thrown on his brakes as he testified, his auto would have been stopped before it struck Miss Busch, and no injury would have resulted. Instead of stopping in time to avoid the accident, as would have been the case if his testimony is to be believed, Miss Busch was carried a good distance away by the severity of the impact, and was severely injured. Not only does Nick testify to the facts above stated as being what really occurred at about the time of the collision, but he also says that he had veered his auto from the north to the south or from the south to the north in the attempt he was making to avoid the accident. This swerving of his auto in opposite directions, it must be observed, was done according to his testimony after he had put on his brakes, and all of this in a space of ten or twelve feet, which he says separated his auto from Miss Busch when she started across the street. It occurs to me, that if such had been the conditions under which he was operating his car the accident would never have happened and it is practically certain that the car would never have passed the point of collision by several feet as is shown by the record. It is quite true that it is impossible for a bystander looking at a moving car to say with any degree of accuracy at what speed it is actually traveling. For instance, no one as a mere looker-on would dare venture the statement that a car was traveling say, at the rate of fifteen, twenty or twenty-five miles. No one would testify thereto as a positive fact, but most any person who has observed the movement of cars, can say if it is moving at an unusual or reckless speed. Two or three witnesses said the auto in question was moving at the time at about forty miles an hour. It may be that the estimate of its speed by these witnesses was greater than the rate at which it was traveling, but from their testimony, we have no reason to doubt it was moving with unaccustomed rapidity on that street where the evidence shows there was considerable traffic. The accident, I think, was the result of reckless driving by a boy of sixteen, who, from some cause or another, lost control of his car, and swinging it as best he could, perhaps in an earnest effort to avert the collision, inflicted the injury of which plaintiff complains.

Miss Busch denies that she was stooping to fix her shoe, or apparel when she was injured. She testifies she had stopped to take powder off her face, that she looked eastward, saw the car coming at great speed, and that before she could move, it suddenly swerved and struck her. Mrs. Mary Hall says she saw when the car made a sudden curve and struck Miss Busch, who was in a standing position. She testifies she was in Rica's store, and that the car was coming so fast she came out to see "what it was." This witness is not a relative of the plaintiff, and as far as the record discloses has no interest whatsoever in the outcome of the suit.

The District Judge did not give written reasons for his judgment. It is obvious that he must have accepted the version which was given of the occurrence by Miss Busch and the other witnesses of plaintiff, and from their testimony, concluded that the collision had resulted from the reckless, careless, incompetent or negligent

driving of the auto. I find, after a re-examination of this case, that it is more rational to credit the version of the accident as given by plaintiff's witnesses, than to accept the improbable narrative of the occurrence by the driver of the auto.

In any event, the District Judge so found, on this, a question of fact, and his judgment comes up to us with a presumption of correctness, or else there would be no value in such findings by trial courts. Unless such error is clear or manifest, when the testimony is conflicting, our duty is to affirm. Scopini et al. vs. Bossier Levee Board, 111 La. —, 36 So. 102; Dunn vs. Brual, 155 La. —, 99 So. 296; Gilliand vs. Feibleman's, Inc., 161 La. —, 108 So. 112; Smith vs. Minder Lbr. Co., 114 La. —, 38 So. 821. This has been the established doctrine dating from our earliest decisions. When such error appears, an appellate court should not hesitate to reverse; otherwise it should leave undisturbed the conclusions arrived at below. I find here that the proof entitled plaintiff to damages, and that there is certainly no error to warrant a reversal.

With an amendment to the judgment below increasing the amount allowed to $1,000.00, it should be reinstated and affirmed.

LECHE, J., dissenting. There is no reason why a claim for damages for personal injury should not be supported by the same preponderance of evidence and proved with the same certainty which the law requires in a suit upon a claim of any other character. The only fact established with certainty in this record, is that Miss Busch was painfully injured when she was struck on a public highway by an automobile driven by the minor son of defendant. It is shown with equal certainty that the accident happened outside the limits of the City of Baton Rouge, practically in the open country, on a public highway known as the Greenwell Springs road, and not at a street intersection, and it also appears that there is a great deal of vehicular traffic at this particular place.

Ordinary prudence and the law both require that a pedestrian stop and look before attempting to walk across such a highway. The whole case hinges upon the question whether Miss Busch exercised, as she should have done, common ordinary prudence before stepping out into the road and in the path of an automobile which was admittedly within the range of her vision. What happened after she left the sidewalk and crossed over the bridge spanning the drain ditch, is the subject of very conflicting accounts by the witnesses, few if any, of whom were free from intense bias. Estimates from such witnesses, of the speed of defendant's automobile and of distances are given in an almost reckless manner and are on their face, absolutely worthless.

Miss Busch when struck, was in the road, in the path of vehicular traffic, where defendant's son had to pass, where he had the right to drive his automobile and where Miss Busch should not have been, except after making sure that it would be safe for her to pass.

There is no testimony from any witness, which justifies Miss Busch in thus risking her safety and her life, and the conclusion is irresistible that she was injured as the result of her own imprudence. The version of the accident, as given in our original opinion, seems to me, the only one consistent with the admitted facts and consonant with ordinary reason.

I respectfully dissent from the conclusions reached by my associates.