## JOHNSON v. BOYLE

(Dec. 13, 1927.  Opinion and Decree.)
(Jan. 17, 1927.  Rehearing Refused.)

(*Syllabus by the Court*)

1. Louisiana    Digest—Automobiles—Par. 4 (c).

Drivers of motor vehicles owe children, aged, infirm and drunken pedestrians, especial care, particularly at intersections, where pedestrians, observing police regulations, have the right of way.

2. Louisiana Digest—Automobiles—Par. 8.

Plaintiffs, in physical injury cases, are prone to exaggerate in expressing their sufferings in terms of money.

(Civil Code, Article 2315.  Editor's note.)

Appeal from Civil District Court, Division "B". Hon. M. M. Boatner, Judge.

Action by Cordelia Johnson against Thomas J. Boyle.

There was judgment for plaintiff and defendant appealed.

Judgment amended and affirmed.

W. H. Talbot, of New Orleans, attorney for plaintiff, appellee.

Jas. B. Rosser, Jr., of New Orleans, attorney for defendant, appellant.

WESTERFIELD, J. Plaintiff, a negress seventy-nine years old, sues for damages for personal injuries in the sum of $14,500.00 which she itemizes as follows:

For the impairment of the functioning of the left arm and hand _____$6,000.00
For physical injuries sustained, contusions of the body, head, face and dislocated hip _____ 3,000.00
For pain, suffering and mental anguish _____ 4,000.00
For loss of job which paid her $6.00 per week which she is now unable to keep because of said injuries _____ 1,500.00

She alleges that on March 10th, at 8:30 a. m., while crossing St. Charles Avenue at the intersection of Third, an automobile belonging to and being driven by defendant at excessive speed, and in a reckless manner, struck her as she neared the sidewalk on the river side of St. Charles Avenue; that in consequence of the accident her left arm was broken at the wrist, her right hip dislocated and her body, head and face and limbs inflicted with general contusions.

Defendant, denying all fault, answers:

"That on the morning of the accident, defendant was driving his automobile at a moderate rate of speed on the river side of St. Charles Avenue, going in the direction of Canal Street, that a milk wagon was on the same side of said avenue, a little distance above Third Street, and in the act of making a detour or turn into Third Street, that the plaintiff was standing at the time on the neutral ground of said avenue and said Third Street, on the downtown or Canal Street side thereof, preparing to cross in the direction of the river, when plaintiff was first observed by defendant who slowed down on account of said milk wagon turning out Third Street at the time, that plaintiff then came from behind the side of said milk wagon directly in front of defendant's automobile and could have crossed said avenue in safety, when she stopped and hesitated, defendant in the meanwhile having swerved his car to allow her to pass his machine, when the plaintiff changing her course, suddenly ran in front of defendant's car, who was unable to stop in time to avoid striking and slightly injuring her."

The district judge who tried the case first allowed plaintiff $2500.00, and after granting a new trial reduced the amount to $1500.00.

The record contains only the testimony of plaintiff and defendant and plaintiff's doctor who describes her injuries.

We are urged to apply the rule to the effect that plaintiff carries the burden of proof, and must make his case certain.

In this case, however, defendant's version of the accident involves him with responsibility for the consequences.

He saw plaintiff standing on the neutral ground, preparing to cross the street in time to stop his automobile, which he did in order to allow her to pass, but because of her confusion or terror or age, or all three, she hesitated, whereupon, he started his car and she ran into it.

The circumstances were such as to impose the necessity of great care on defendant's part. He was crossing an intersection. He saw an aged negress and realized that she was about to cross the street. He had stopped his car and should have remained motionless until she

crossed his path or had indicated her intention to allow him to cross first. He should have called to her, or warned her of his intention to start his car. The fact that she was an old woman added to defendant's responsibilities. Drivers of automobiles owe especial care to children and to aged, infirm and drunken pedestrians, particularly at intersections where pedestrians, observing police regulations, have the right of way.

The milk wagon, the presence of which is denied by plaintiff, can not absolve defendant, because he says he saw plaintiff both before and after the wagon obscured his view and had stopped his car, after the disappearance of the wagon, if it was ever there.

In Gonzen vs. Feraci, 2 La. App. 115, we said:

"The defendant urges that the plaintiff had been drinking just before the accident and that he was then drunk. There is no evidence that at the time of the accident or before he was under the influence of liquor. The evidence is to the contrary although he had been indulging in two drinks. Symptoms of drunkenness developed only after the accident when he was brought to the hospital where he was put to bed and he cursed and shrieked and had to be tied to his bed. But being drunk did not put him beyond the protection of the law. On the contrary, it placed him in the position of a child—or of those unable to take care of themselves and called for more caution on the part of others. Horsthempke vs. New Orleans Ry. and Light Co., 146 La. 932, 84 South. 210." See also McClanahan vs. Vicksburg, S. & P. Ry. Company, 111 La. 781, 35 South. 902, and McGuire vs. V. S. & P. Ry. Co., 46 La. Ann. 1543, 16 South. 457.

The fact that in her confusion she may have turned toward the automobile can not help defendant's case. In Navailles vs. Deilman, 124 La. 421, 50 South. 449, the court said:

"We are satisfied that the explanation of this sudden turning and running back is that when she looked back the machine had just come out of Street 'A' and was in the act of turning towards the east and was therefore pointed straight for the path ahead of her; so that she imagined (very foolishly, no doubt) that if she kept on she would be run over. Constant practice in steering clear of pedestrians and vehicles coming towards us, or making toward our path at an angle and at a rate that will bring on a collision if we do not change our course, has so trained the eye of every grown person—especially of those living in cities, where the avoidance of collisions is more constantly practiced— that we are all of us—old ladies and all— pretty good judges of what line is being followed by a body moving towards us, or so as to intercept, or converge with our own line of progress."

"The act of the old lady not having been voluntary, but simply the result of terror, does not constitute negligence on her part."

See also:

"If an automobile comes upon a boy under circumstances calculated to produce fright or terror, and such fright causes an error in judgment, by which he runs in front of the automobile, he is not guilty of contributory negligence." Thies vs. Thomas, (Sup.), 77 N. Y. Supp. 276.

We have now to consider the question of quantum. Plaintiff has been guilty of more exaggeration than is customary in personal injury cases. We sometimes wonder whether a plaintiff would not suffer greater shock, as the recipient of a judgment for the full amount of damages claimed, than the defendant, cast for the judgment. We may be pardoned for suggesting that the advice of St. Matthew, "Ask and you shall receive," and his assurance, "For everyone that asketh receiveth; and he that seeketh findeth; and to him that knocketh it shall be opened," has reference to spiritual consolation and

not material advantage. A rather wide-spread misunderstanding of Scripture in this respect may be responsible for the universal tendency of plaintiffs in physical injury suits to magnify their sufferings when expressed in terms of money.

Fourteen thousand and five hundred dollars is more than we can allow in this case. Plaintiff says she dislocated her hip. She is mistaken for she could not walk several squares, as she did immediately after the accident, with a dislocated hip. There is no evidence of contusions on her face, body, limbs, etc.

Plaintiff's wrist was broken and some impairment of the use of her hand will likely be permanent. She earned $6.00 per week. We will allow $1000.00.

For the reasons assigned the judgment appealed from is amended by reducing the amount awarded plaintiff from $1500.00 to $1000.00 and as amended it is affirmed.