No.———
· First Circuit

---

## MORGAN v. LA. RICE MILLING COMPANY, INC.

(Februry 15, 1928. Opinion and Decree.)
(March 7, 1928. Rehearing Refused.)
(April 9, 1928. Writs of Certiorari and Review denied by Supreme Court.)

*(Syllabus by the Editor.)*

1.  Louisiana Digest—Automobiles—Par. 4, 4 (c).
The driver of an automobile is not negligent when he hits a pedestrian who, although he had been running along the side of the road in the same direction, suddenly starts to run across the road directly in front of the automobile, giving the driver no chance to stop or turn his car before striking him.

Appeal from the Parish of Acadia. Hon. W. W. Bailey, Judge.

Action by Mrs. Alice Sarver Morgan et al. against Louisiana Rice Milling Co., Inc.

There was judgment for plaintiffs and defendant appealed.

Judgment reversed.

Philip S. Pugh and Percy T. Ogden, of Crowley, attorneys for plaintiff, appellee.

Monroe & Lemann, of New Orleans; W. C. Carmouche, of Crowley; and Modisette and Adams, of Jennings, attorneys for defendant, appellant.

ELLIOTT, J., dissents for written reasons.

LECHE, J. The judgment of the District Court in the above cause, rendered upon the verdict of a jury, condemns the defendant to pay unto plaintiff, damages for the death of Joseph A. Morgan who was struck and killed by an automobile driven by an employee of the defendant. The plaintiffs are the widow and minor children of Morgan, and the defendant does not deny its responsibility, if any, for the conduct of the driver of the automobile, who was acting within the scope of his employment.

The accident happened on the public highway between Crowley and Kaplan, a few miles south of Crowley. That highway runs approximately due north and south, is thirty feet in width and its surface is graveled to within six and a half feet, about, of the drainage ditches on its sides. Its edges measuring, as noted, about six and a half feet, are overgrown with grass extending to the side ditches. The center part of the road, coated with gravel, is about seventeen feet wide and it is almost exclusively used for vehicular traf-

fic; there are two well marked paths on the graveled part of the road, one on the east side used for traffic going north, and the other on the west side, used for traffic going south.

Morgan was on his way north to Crowley, he stopped and parked his Ford automobile to get some lubricating oil. In order to get the oil, he had to walk back south, some 300 or 400 feet to reach the home of Fred Cole. He went into Cole's premises, got a small can of lubricating oil, went back on the public highway and was facing north on his way to his Ford with the can of oil in his hand, when he was struck by the automobile driven by defendant's employee.

The automobile of defendant was under the control of and was being driven by Jules Motty, who was accompanied by Z. Warren Broussard. Motty and Broussard are employees of defendant and were on their way from Kaplan to Crowley, so that when they approached Morgan, they were, like Morgan, going in a northerly direction. They saw Morgan who was walking or running, as they say, along the edge of the gravel and the grass for some distance before they reached him, but just before reaching Morgan, they met another automobile going south nearly in the center of the road. This automobile, a Chrysler coupee, was being driven by W. T. Elder who was on his way to Kaplan to see a Mr. Meaux. Elder thinking that he might meet Meaux on the road, when he saw defendant's automobile coming, purposely drove near the center of the road in order to see who were the occupants of the automobile going north and this action of Elder compelled Motty to keep well on the east side of the road to avoid a collision with the Chrysler, and immediately thereafter, the distance being estimated anywhere from 20

to 40 feet and the time only a few seconds, Motty caught up with Morgan.

Motty and Broussard whose testimony accords in every essential particular, say that the direction of the course along which they were driving would have led them two or three feet to the left of Morgan, if he had also kept straight on in the same direction he had been running, but that as they approached within a few feet behind him, he suddenly changed his course, started across the road in a northwesterly direction and got in front of their automobile. The road was straight, the weather was clear and all the witnesses agree that it was then about 7.30 o'clock on a cold frosty morning. Morgan was lightly clad and his apparent purpose in running was to keep his body warm. Motty, in order to avoid striking Morgan, then instantaneously veered the automobile to the left. The automobile skidded and Morgan was first struck by the right front fender and then again by the right rear fender. The automobile then proceeded in a northwesterly direction and Motty succeeded in stopping it on the west side of the highway, about 30 feet beyond the place where Morgan was thrown to the ground. Broussard, who occupied the right hand seat in defendant's automobile and was in a better position to see, says that Morgan's head came in contact with the right rear fender of the automobile and this most likely caused the fracture of Morgan's skull, resulting in his death a few days later.

The first other person to reach the scene, after the accident, was Elder, then came Cole, from whom Morgan had procured the can of oil.

These two witnesses describe the scene substantially as follows: Morgan's automobile was parked two or three hundred feet north of the place where the accident occurred, defendant's automobile, which had been occupied by Motty and Broussard, was about thirty or forty feet northwest of Morgan's body, on the west side of the road and headed towards the west side ditch, Morgan's body was lying diagonally across the road, and one of the witnesses says he was lying on his back. Motty, who had reached the body first, had turned him over, for when Morgan fell his face was on the gravel. The oil can had rolled into the ditch on the east side and the oil was spread from the gravel and over the grass to the edge of the ditch. Fred Cole says that the gravel showed that defendant's automobile had skidded twice, the first time just south of Morgan's body and the second time near the spot where it had been stopped.

The conditions existing at the locus immediately after the accident are not disputed, and a map annexed to the record of testimony, illustrates them better than they can be described in this opinion. They constitute a chain of circumstantial evidence which is in perfect accord with the testimony of Motty and Broussard, the only eye witnesses to the tragedy.

The first skid accounts for the fracture of Morgan's skull by the rear right fender of defendant's automobile. It is well known and it is in accordance with physical laws, that when an automobile is driven at a speed of about thirty miles or more, a sudden and sharp turn will cause it to move sideways. The front wheels will change their direction, but the back wheels, owing to the momentum of the body which they support, will not follow into the tracks of the front wheels, they will skid, will continue to move forward on a straight line and the

automobile then advances sideways, and that is why Morgan was struck by the right side fenders of the defendant's automobile.

Both Motty and Broussard insist in their testimony that although forced to the east side of the road by Elder's automobile, they would have passed on a straight line several feet to the left of Morgan, if the latter had not suddenly changed the course of his movement. It is only a matter of surmise why Morgan suddenly turned towards the center of the road. There was apparently no reason for him to have done so and it is equally apparent that Motty had no reason to believe that Morgan would suddenly change his course and place himself in front of the automobile.

When asked as to whether he blew his automobile horn before reaching Morgan, Motty frankly admits that he does not remember. He says that he always blows his horn when pedestrians on the highway are not looking, that he does this so often, that the habit has grown on him to the extent that he does it automatically without mental reflection and he cannot remember. It is a matter of common knowledge that an old Ford, such as was being driven by Motty, is quiet noisy and can generally be heard when running at thirty miles an hour, for a great distance. But it nevertheless appears that Morgan left the safe path he had been following and ran suddenly without looking or listening, into a place of great danger.

The testimony of both Motty and Broussard is given frankly, it appears truthful, it accords thoroughly with the circumstantial evidence of the facts testified to by Elder and Cole, and it is difficult to conceive why the jury rendered a verdict against defendant. Under the facts established by all the testimony in the record, defendant was not guilty of any fault, and plaintiff's demand should have been rejected.

For these reasons the judgment appealed from is avoided and reversed and plaintiff's demand rejected with costs.

———

ELLIOTT, J., dissenting:

I think the judgment appealed from should be affirmed. According to Messrs. Motty and Broussard, the first named being the driver of defendants' automobile, and Broussard, his companion who was sitting by his side, Mr. Morgan, the deceased was walking on the right hand side of the highway going north towards Crowley. Defendant's automobile was also going north on the highway in the same direction, and Motty saw Mr. Morgan a hundred yards or more ahead, but defendant's automobile just before overtaking him met another automobile coming south. The line on which this southbound car was running in the road, made it necessary for Motty to stay closer to the right hand side of the road and closer to the line in which Mr. Morgan was walking than likely would have been done if it had not been for the course taken by the car coming south which passed Mr. Morgan just as defendant's car came up close behind him. The line on which defendant's automobile was running, due to the southbound car, would have passed two or three feet to the left of Mr. Morgan, but just after the southbound car had passed him, and with the automobile of defendant close in his rear, Mr. Morgan suddenly and unexpectedly to Motty, changed his course and without looking back, left the side of the road and started running diagonally ahead in the road, placing himself almost immediately in front of defend-

ant's automobile, and so close, that due to the speed at which it was running, it was impossible, so Motty says, to avoid striking him.

The law, Act 232 of 1926, Section 15, does not in terms require the driver of an automobile to slow down for the purpose of passing close by a pedestrian in the road, but in my opinion it is contemplated that for the purpose of passing close to a pedestrian should slow down and swerve away from him, so that in case he suddenly and unexpectedly, and without looking back, steps a few feet from the side of the road into the highway, the driver can avert striking him. A proper human regard for the pedestrian, requires that this be done.

If the driver of the automobile knows that the pedestrian has seen him and knows that he is coming up behind, he then has the right to act on the supposition that the pedestrian will keep straight ahead and not step out in the line of contact, but when the driver, as in this case, has observed that the pedestrian walking ahead has not looked back, and therefore knows that he has not seen him and may not have heard him, then the last clear chance to save life and responsibility for not doing it rests on the driver of the automobile. And when his line of direction is within two or three feet of the pedestrian, then the duty is on him to slow down timely and swerve out in the road further to the left in time to avert just what happened in this case. Motty says, and he is corroborated by Broussard, that he did apply his brakes and swerved to the left the moment he saw Mr. Morgan's sudden movement. But at the time he acted, it was of no more effect than if he had not made any effort at all. According to Motty and Broussard the last clear chance was in Motty's hands; he could have saved the situation by timely slowing down and bearing further to the left, but he kept straight ahead on the line on which he was running and kept up his speed until it was too late. This left Mr. Morgan's life dependent on the chance that he would keep straight ahead and would not suddenly leave the side of the road and turn running diagonally ahead in the road without first looking behind him.

Burvant vs. Wolfe, 126 La. 788, 52 South. 1025, is a case in which a last clear chance responsibility existed at a place where the danger of running over pedestrians was apparent to the driver of an automobile, and in which the observations of the Court seem to me to be pertinent to the one in hand. It is not negligence in all jurisdictions to turn out into a road without previously looking behind as defendant's witnesses, Messrs. Motty and Broussard, say he did. See Ruling Case Law, Vol. 2, p. 1186, Section 21, and Vol. 13, p. 293, Section 243. But suppose it was a negligent act, that did not absolve defendant from the duty incumbent on it, to take into account and provide for the known danger of passing within two or three feet of a pedestrian walking ahead on a road, and going at a speed so fast that the car could not be checked after it had been observed that the pedestrian had not looked back. The margin was too close. The striking is not excusable by showing that it could not have been averted after the danger was seen.

"A pedestrian in a highway is under no legal duty to look back or watch behind, to see whether or not he is in danger of being struck or run down by any vehicle approaching from the rear." Hatzakorian vs. Rucker-Fuller Desk Co., 41 A. L. R., 1027.

The above is part of the syllabus and opinion in a California case in which a pedestrian walking on a highway in the night time without having looked back, was struck by an automobile and killed.

If, as held in that case, a pedestrian is not bound to look behind before he turns out into a highway in the night time, then there is less reason for doing so in the day time as in the present case.

For the foregoing reasons, I hereby dissent.