### GUILLORY et ux. v. UNITED GAS PUBLIC SERVICE CO. et al.

#### No. 1098.

Court of Appeal of Louisiana. First Circuit.

May 22, 1933.

W. C. Perrault and R. Lee Garland, both of Opelousas, for appellants.

E. G. Burleigh, of Opelousas, and Hawthorn, Stafford & Pitts, of Alexandria, for appellees.

ELLIOTT, Judge.

Bertina Guillory, a negro girl, daughter of Joseph H. Guillory and Lillie Higgins Guillory, his wife, was killed on Main street in the city of Opelousas by an automobile being driven by C. E. Jones. The occurrence took place at about the hour of 4:30 p. m. on April 2, 1932. Joseph H. Guillory and his wife brought suit for damages against United Gas Public Service Company and, by supplemental petition subsequently filed, C. E. Jones was made a party defendant. Joseph H. Guillory claimed of them the sum of $10,572 in solido, and his wife $10,500 as damages on account of her death.

They allege that C. E. Jones was an employee of United Gas Public Service Company; that he was driving at the time in question within the scope of his employment and while pursuing the business of his said employer; that in driving, he negligently ran into and inflicted on their daughter fatal injuries, which caused her death about 40 minutes later; that he saw or should have seen their child crossing the street a sufficient distance away to have enabled him to avoid the fatal happening; that he did not keep a proper lookout ahead, etc.; that he, together with his said employer, are responsible for his act.

United Gas Public Service Company for answer admits that the defendant Jones was employed at the time as its salesman, but denies that he was working in its service or engaged in its business, as claimed by the plaintiffs. It alleges that he had quit work for the day and was driving his own automobile on a personal errand. It denies the negligence alleged against Jones and denies liability for his act on account of which plaintiffs have sued, but in the alternative, and in the event it is found that he was at the time engaged in its service and was also negligent and at fault in the matter of the death of plaintiffs' daughter, it then in that event alleges that plaintiffs' daughter was also negligent; that her negligence contributed to, served to cause and bring about her own death, and that plaintiffs have therefore no right to recover of it on account of his said act.

C. E. Jones for answer denies the negligence alleged against him, denies that he was employed by United Gas Public Service Company so as to make them responsible for his act while driving his automobile on the occasion in question, and denies running into and striking plaintiffs' daughter. He alleges that he was driving his own automobile on a personal mission, and that while so doing she, without watching her steps, either walked or ran into the right rear fender of his automobile under circumstances which made it impossible for him to anticipate her movements and to avoid the result of her act; and that her negligence in so doing was the sole cause of the accident, which resulted in her death.

The lower court, assigning written reasons, rendered judgment rejecting plaintiffs' demand. The plaintiffs have appealed.

The defendant Jones alleges and testifies that he was not looking at and did not see plaintiffs' daughter at the time she received the injury which killed her. He testifies that, when he first observed her, she was standing on the curbing of Main street looking south; that the place where she stood was about 7 feet south of the corner of Grolee street; that he was at the time driving at less than 15 miles per hour; that at the time he first saw her she was about 15 or 20 feet ahead; that he continued across the intersection, and when he got within 4 or 5 feet of where she stood, which we understand means north of where she was standing, his course carrying him about the same distance east of where she was standing, making no movement indicating any intention on her part to enter into or cross the street, he took his eyes off her for a moment in order to observe traffic and almost immediately afterwards heard the blow, which resulted from her impact with the rear end of the right-hand side of his automobile; that she either walked or ran into his automobile as it was passing the place where he had just a moment before observed her to be standing; that upon hearing the noise, made by her im-

pact with his automobile, he, without stopping his car, turned his head and glanced back through the rear-view glass of his car, and whereupon he saw the form of a girl lying on her back on the pavement and directly opposite the point where he had just seen the girl standing.

Plaintiffs contend that their daughter was not standing on the curb, as alleged and testified to by Jones; that she was standing on a little bridge, which spans the Main street gutter on the south side of the Grolee street intersection; and that the opinion of the lower court contains an erroneous statement of fact to the effect that she was standing some 14 feet south of the crossing. Plaintiffs are in error in so contending. The opinion says that Jones testified that she was standing about 7 feet south of the crossing.

The opinion discusses all the contested points in the case. We excerpt from it as follows:

"As to the charge, that the defendant, Jones, did not maintain a proper lookout so as to see the girl in time to avoid the accident, the Court was favorably impressed with the testimony of this defendant, who testified in a straightforward and convincing manner, and believes, that he took all the precautions, that would be expected or required of any other prudent and careful driver under the same circumstances. His testimony, except as to the place where the girl was standing on the Main Street curb just before she attempted to cross the street, does not conflict with that of any other witness and even on this point his testimony does not stand discredited. Clifford Lewis and Mrs. Gatlan testified, that immediately before attempting to cross Main Street, that girl was standing on the pedestrian bridge, spanning the Main Street gutter and in line with the sidewalk along the South side of Grolee Street. Whereas defendant, Jones, testified, that she was standing on the curb by a hydrant about 7 feet South of the South edge of this pedestrian crossing. Mr. Jones was much nearer to the girl than either of these other witnesses and therefore in a better position than they to see where she was standing. However, the Court is of the opinion, that under the circumstances, which attended this accident, it is immaterial whether she unexpectedly stepped from the pedestrian bridge out into the street and into the side of the car or from a point 7 feet South of the pedestrian cross-walk. In either event she was negligent in not looking both ways on Main Street before stepping out into the side of a passing car, which negligence was the proximate cause of her fatal injury and unfortunate death.

"Plaintiffs claim, that Jones was negligent in not sounding his horn at the intersection of Main and Grolee Streets. The answer to that is, that Section 9 of Ordinance 3 of the city of Opelousas for the year, 1929, requiring operators of motor vehicles to sound their horns at intersections was repealed by Ordinance 5 of 1929. Since the girl was not in the street when defendant, Jones, was about to pass her and she did not indicate by her attitude and position, that she was about to cross the street, reasonable care, under the circumstances, did not require that he sound his horn."

The facts stated in the opinion are borne out by the record.

The W. T. Sandoz building is shown on the map made by R. M. Hollier to be situated on the south side of Grolee street at the corner of Grolee and Main and fronts on Main street. It also shows the residence of Mrs. Gatlan and the place where she claims to have been standing at the time of the happening in question. Mrs. Gatlan does not claim to have seen the occurrence but to have been standing on the sidewalk in front of her house, looking northward up the street in the direction of the corner a moment before the impact, and to have seen plaintiffs' daughter standing on a little bridge between the street and the sidewalk that people use who cross Main street at that corner. She says that when she looked the little girl was standing there and stooped over for some reason, that she turned her head to look for her baby, and while looking for her baby heard the impact between plaintiffs' daughter and the automobile driven by the defendant Jones. She does not claim to have seen the girl go from the place where she was standing to the place where the impact occurred, and we are not informed as to the period of time that elapsed after she took her eyes off the girl before she heard the impact. She marked the place on the map where she says plaintiffs' daughter was lying after the impact, fixing it in about the middle of Main street. The decided preponderance of the evidence is to the effect that the girl was lying within 4 or 5 feet of the west curb of Main street and about 7 feet south of the corner.

Two young negro men, Mason Wyble about 19 and Clifton Lewis about 17 years of age, are the only two persons who claim to have seen the impact between plaintiffs' daughter and the automobile driven by Jones. Mason Wyble says that he was riding a bicycle going south on Main street accompanied by Lewis; that looking ahead of him down Main street he saw plaintiffs' daughter making her last step and upon which she came in contact with the car by the back door at the rear end. He did not see her leave the sidewalk and did not see her until the moment of the impact. He, in effect, says that she walked into the rear end of the passing automobile.

Clifton Lewis, also riding a bicycle in company with Wyble, says that looking ahead he saw plaintiffs' daughter, standing on the corner, but did not see her leave the corner; that he ceased looking at her for a period of time not stated, and when he next looked in her direction she was making her last step and was struck by the back end of the car. Asked whether the car came in contact with her or she with the car, his answer was she came into the car, meaning, so we understand him, that she walked into the car. He further says that the girl was about 4 feet from the bridge when struck.

Plaintiffs contend that as Jones testifies she was standing, when he last saw her, about 7 feet south of the corner, and Lewis that she was standing at the corner, and Mrs. Gatlan that she was standing on the little bridge at the corner, and that as Jones, moreover, made statements soon after the accident to Russell Vige, Jack Anselm, and Joe Garrick to the effect that when he last saw the girl she was standing at the corner, that his testimony is seriously discredited. Jones, questioned about his statements to these parties, claimed that while he did not remember using the word "corner" in telling them about where it had happened, yet he says he likely did and would still use the word. As we understand his explanation, he had in mind the immediate locality where it had happened but did not intend to specify the particular place. His explanation seems reasonable, and we follow the lower court in finding that his statements were not inconsistent with his testimony to the effect that the place was in fact about .7 feet south of the corner.

The evidence does not show the distance from Mrs. Gatlan's front gate to the place where she says she saw plaintiffs' daughter standing, but looking on the map brought up in the record and at the depicted size of the blocks above Grolee street, the area of the Sandoz building and of the Gatlan property, we estimate that it must have been about 75 feet. As the bridge of which she speaks is a small, flat, wooden covering, spanning the gutter on Main street, and appears to be about 2½ feet wide by about 3 feet long, it seems a necessary conclusion that it is hardly noticeable as the result of a casual look in that direction from a distance of 75 feet. The witness Wyble says that when he first noticed plaintiffs' daughter he was somewhere about the middle of the block. The map shows that the block is 240 feet north and south, so we estimate that he must have been about 100 feet distant when he saw the impact, and as Lewis was riding at his side at the time he (Lewis) could not be sure, as the result of a casual look in that direction, whether she was in fact standing at the corner or 7 feet south of the corner, as claimed by Jones. Jones was in a position to see with certainty where she was standing at the time he saw her the moment before the impact and the other witnesses were not, and so the testimony of Jones on that subject is not in our opinion refuted with any effect.

Plaintiffs argue in their original and supplemental briefs that their daughter was crossing the street; that the defendant Jones saw her and if he did not, he should, and must therefore be held and regarded as having seen her; that he was driving at an excessive speed for that place, and if such not been the case, he could have stopped or gone around her and avoided striking her; that he did not sound his horn and should have done so; that Jones had the last clear chance to avoid the accident, but due to failure to keep a proper lookout ahead, his excessive speed, and his failure to sound his horn, etc., he did not avail himself of that chance.

█ Taking up these alleged grounds of action, as having deprived their daughter of the benefit of the last clear chance, the evidence justifies the conclusion that the defendant Jones did not sound his horn as he approached this intersection and saw their daughter standing on the curbing of Main street about 7 feet below the corner looking south in the direction he was driving. Plaintiffs invoke section 46 of Act No. 296 of 1928. This section requires that automobiles must be equipped with horns, but forbids sounding them, except as a reasonable warning. Therefore the duty of Jones to sound his horn depended on whether there existed reasonable ground for a warning. We have heretofore referred to the testimony of Mrs. Gatlan that plaintiffs' daughter was stooping on the bridge, and to that of Lewis, that she was standing on or at the corner, and to the fact that no matter at which place she was standing, no witness saw her leave her position or indicate, by any act or sign, that she was about to or might step into the street. Such being the case, there was no need for Jones to sound a warning to plaintiffs' daughter when prudence and caution did not require it.

█ The plaintiffs urge the provisions of section 20 (c) to the effect that the driver of any vehicle upon a highway within a business or residence district shall yield the right of way to a pedestrian crossing such highway within any clearly marked crosswalk or any regular pedestrian crossing, included in the prolongation of the lateral boundary lines of the adjacent sidewalk at the end of a block, except at intersections where the movement of traffic is being regulated by traffic officers or traffic direction devices. This statute is not governing because, as heretofore stated, it appears that plaintiffs' daughter, when last

seen by Jones, was standing still on the curbing looking south. It is true Mrs. Gatlan says she was stooping, but no witness claims to have seen her leave her position on the curbing corner or bridge and start across the street nor to have seen any movement or sign that she intended or might step out into the passage way of traffic. Consequently, no reason existed for yielding something which nobody demanded or apparently needed.

The plaintiffs allege and contend that Jones was driving at an excessive speed without looking ahead. The speed ordinance of the city of Opelousas allows a speed of 20 miles per hour, but concludes with a further provision, quoted in plaintiffs' brief, which reads: "Nor shall any vehicle be operated on any street or portion thereof, irrespective of the speed limits herein established where, under the particular circumstances of the case, the speed at which such vehicle is operated, is obviously hazardous or likely to endanger other vehicles, persons, or property thereon." According to the testimony of Jones and in the absence of anything tending to support the contrary, we are constrained to act on his statement to the effect that plaintiff's daughter, when last seen by him, was standing still, looking south, the direction in which he was going; that he lacked 5 or 6 feet of being opposite where she stood; and that she was not making any movement or sign indicating that she might step forward into the path of his automobile. Such being the case, it is not important whether she was standing on the bridge, at the corner, or on the Main street curbing about 7 feet south of the corner. There was no obvious hazard in passing her under such circumstances, but the question of speed at the place in question requires further consideration.

Main street in the city of Opelousas constitutes part of the Pershing Highway. Consequently, driving thereon is also subject to the provisions of Act No. 296 of 1928. Section 5, subsection (a) and (b), which reads: "Any person driving a vehicle on a highway shall drive the same at a careful and prudent speed not greater than is reasonable and proper, having due regard to the traffic, surface and width of the highway and of any other conditions then existing, and no person shall drive any vehicle upon a highway at such speed as to endanger the life, limb or property of any person. Subject to the provision (a) of this section and except in those instances where a lower speed is specified in this Act, it shall be prima facie lawful for the driver of a vehicle to drive at a speed not exceeding the following, but in any case when such speed would be unsafe, it shall not be lawful." This provision was enacted, as the plaintiffs say, for the public good. It intends the utmost care consistent with reason and prudence in driving on streets, that are at the same time highways, where pedestrians may be always looked for at street crossings. Drivers at street intersections must always be ready for an emergency stop and a party cannot be ready, unless his speed is under such control that he can stop or swerve almost instantly, but the language intends nothing impossible or unreasonable. It intends reasonable speed; any other enforcement would unduly hinder the use of streets.

A witness named Wattie Castain testifies that he reached the scene of the accident in about an hour after the occurrence and saw marks on the pavement where an automobile had skidded for some 18 or 20 feet. Skid marks for that distance would indicate that the automobile that made them was running at great speed; but other parties looked over the place where the accident had happened soon after the occurrence and before Castain came to the place, and they saw no skid marks on the ground. The passage of automobiles at that place is of frequent occurrence. We are not satisfied that the skid marks, which Castain claims to have seen, were made by the automobile which Jones was driving.

Mrs. Gatlan testifies that she heard the squeaking of brakes on the automobile Jones was driving immediately after the accident, and that the impact between plaintiffs' daughter and his automobile made a loud noise. A noise of this kind often results when brakes are applied hard; but we do not think that any excessive speed on the part of Jones should be inferred from the fact that Jones, upon discovering the body of the girl behind him, under the circumstances mentioned in his testimony, applied his brakes hard. And the fact that Mrs. Gatlan testified that the impact made a loud noise has also been given, we think, its proper weight.

A circumstance suggestive of great speed is the fact that a girl, 14 years old and apparently well developed for her age, and possessing, no doubt, the agility and strength natural to her age, upon walking up against the rear end of a passing automobile was thereby dashed to the pavement with such violence that she was unconscious when picked up a moment afterwards, and death resulted in 40 minutes. Such a result is very persuasive that the vehicle, accomplishing this result, must have been moving with destructive violence. We are restrained from indulging an inference of the kind mentioned by the testimony of Jones, concerning his speed, not contradicted, and the further fact that, if Jones had been driving at an unusual speed at the time and place, it would likely have been observed by people standing there and

no direct testimony showing fast speed at the place was produced.

Plaintiffs cite us: Burvant v. Wolfe, 126 La. 787, 52 So. 1025, 29 L. R. A. (N. S.) 677; Albert v. Munch, 141 La. 686, 75 So. 513, L. R. A. 1918A, 240; Kelly v. Schmidt & Zeigler, 142 La. 91, 76 So. 250; Reed v. Sievers, 146 La. 391, 83 So. 685; Duffy & wife v. Hickey, 151 La. 274, 91 So. 733; Gouzien v. Feraci, 2 La. App. 115; Johnson v. Boyle, 5 La. App. 362; Hodges v. Davis, 7 La. App. 327; Busch v. Scimeca, 8 La. App. 454; Santos et al. v. Duvic, 16 La. App. 105, 133 So. 399; McDonald v. Stellwagon (La. App.) 140 So. 133; Wyble & wife v. Putfork (La. App.) 141 So. 776; Harrison v. Shreveport Yellow Cab Co. (La. App.) 142 So. 724, in which our courts have awarded damages for deaths and injuries, resulting from the operation of automobiles on highways and the streets of cities and towns, due to failure to sound horns, maintain a slow speed and steady look ahead at places where a prudent and reasonably cautious driver would or should have seen a person ahead in time to have stopped or driven around them. The principle on which these cases are based is in harmony with our own views.

As Jones was driving on a course which carried him on a parallel, estimated at from 5 to 8 feet east of where plaintiffs' daughter was standing, we have considered the cases, Morgan v. Louisiana Rice Milling Co., 8 La. App. 77; Kelly v. Ludlum, 9 La. App. 57, 118 So. 781; Baquie v. Meraux, 11 La. App. 368, 123 So. 338; and Alexander v. Standard Coffee Co., Inc., 16 La. App. 286, 134 So. 261, in which damages were claimed due to neglect in driving on a parallel course too close to parties walking ahead, without making allowance and leaving a reasonable margin of safety for a change of course on the part of the party walking ahead without knowledge of the danger of being struck by an automobile following close behind. But these cases cannot control the present situation, because the situation is not the same.

Under the evidence, it has not been made to appear that Jones was negligent and at fault. It does appear that plaintiffs' daughter was at fault for entering into the street in the very face of an on-coming automobile and without looking forward or to either side, walking into it as it was passing. And the evidence fails to show that the defendant Jones could have avoided the accident; it appears, instead, that it was on his part unavoidable. Having reached this conclusion, it is not necessary to discuss the grounds urged as a cause of action against United Gas Public Service Company.

For these reasons the judgment appealed from is affirmed.