The day selected has legislative sanction as expressed in the statute.

The commissioners acted for both. It does not appear that any one was prejudiced in his right, nor does it appear that the commissioners had more to do than they should have had. There is no wrong or error to be corrected. The large majority in favor of the result seems to have been fairly obtained.

7. The registration laws overlooked.

This averment does not appear as sustained by the facts. The charge is general and not sustained. No one complains that he was denied the right to vote, and that his name was not in the registration list furnished to the commissioners.

8. Women excluded from voting.

No woman applied to vote. We will not assume that had a woman applied to vote, and had stated to the commissioners that she had a right to vote, and had pointed out the law giving her the right, that she would not have been permitted to vote.

In the absence of proof of a right denied, we will not annul an election.

For reasons stated, the judgment is affirmed.

LAND, J., recused.

--------

(52 South. 1025.)

No. 18,078.

BURVANT et ux. v. WOLFE.

(June 6, 1910. Rehearing Denied June 28, 1910.)

*(Syllabus by Editorial Staff.)*

1. MUNICIPAL CORPORATIONS (§ 705*)—COLLISION OF AUTOMOBILE WITH BOY ON STREET —CONTRIBUTORY NEGLIGENCE.

A boy 11 years old, following others who had just preceded him, attracted by a large crowd around a police patrol wagon at the lower end of a block, and more largely on the other side of the street, ran along the sidewalk on the left side of the street in the direction he was going, till near the middle of the block, when he stepped into the street, running diagonally towards the wagon, and when out two to four feet from the curb was struck by an automobile coming from the rear, which was on that (the wrong) side of the street, because of the crowd at the lower end of the block being greater on the other side of the street. He apparently did not see the machine nor hear it, till just before it struck him, its tooting apparently having been at intervals and not continuous. *Held*, that no question of contributory negligence was involved.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 705.*]

2. MUNICIPAL CORPORATIONS (§ 705*)—COLLISION OF AUTOMOBILE WITH BOY ON STREET —LAST-CHANCE DOCTRINE.

Even if a boy, who, in the middle of the block, running diagonally towards a crowd about a police patrol wagon at the lower end of the block, stepped into the street, and when two to four feet from the sidewalk was struck by an automobile coming from the rear, and on the wrong side of the street because of the crowd, was negligent, the driver of the machine, who did not see the boy, having his attention on the crowd ahead, was liable, under the last-chance doctrine, as had he been looking, as was his duty, he would have seen the boy, and that he was unaware of the danger; and this though possibly, even then, it would have been too late to have stopped, or sufficiently have changed the direction of, the machine, so as to avoid a collision.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 705.*]

3. DEATH (§ 98*) — INADEQUATE DAMAGES — DEATH OF CHILD.

A recovery of $1,500 for death of plaintiffs' child, 11 years old, will be increased from $1,500, as insufficient, to $3,000.

[Ed. Note.—For other cases, see Death, Cent. Dig. § 124; Dec. Dig. § 98.*]

Appeal from Civil District Court, Parish of Orleans; Walter B. Sommerville, Judge.

Action by George J. Burvant and wife against J. Townsend Wolfe. Judgment for plaintiffs. Defendant appeals. Judgment increased and affirmed.

Woodville & Woodville, for appellant. Armand Romain, for appellees.

PROVOSTY, J. The little 11 year old son of the plaintiffs was struck down by the automobile of the defendant, and died the next day. The street upon which defendant was

driving his automobile was asphalted. It had no gutters and its surface was less than a foot lower than the sidewalk. As defendant entered the block, there was at the lower end of it a large crowd gathered around a police patrol wagon which had made an arrest, and more people were hastening towards this center of excitement. Defendant slackened speed to six or seven miles an hour; and, as the crowd was densest on the right-hand, or downtown, side of the street, where the patrol wagon stood, he steered towards the left, or uptown, side, hoping to be able to pass —tooting his horn, so as to give warning to the crowd to open a passage for him. The accident occurred half way down the block, and two to four feet from the left-hand, or uptown, side curbing. The boy had run down with other boys from some distance up the street towards the scene of the excitement, and seems to have lagged behind, for we gather that at the moment of the accident he was alone in the middle part of the block, except that there were persons seated on their doorsteps, or standing at their gates.

One witness, a colored woman, says that the boy was standing in the street when the automobile came from behind and struck him. Another witness, Mrs. Duker, says the boy was walking, not running; that he stepped from the sidewalk to the street, going in the direction of the patrol wagon; that he made two steps in the street and, as he was making the third, the automobile struck him. Another witness, Valcour, says that five little boys were running on the banquette towards the excitement; that, when they got in the middle of the block, "they jumped into the middle of the street, and the automobile came along and struck one and knocked him down; that he left the banquette 10 or 15 feet ahead of the automobile." A witness for defendant, Mrs. Oddo, says that the boy came running on the sidewalk, "looking at the patrol wagon; he stepped right in front of the automobile." Another witness for defendant, Po-

lice Officer Kiernan, says that "the boy ran right out, jumped out, into the street, and the automobile struck him; it was the wheel that struck him." Another witness for defendant, Police Officer Duffy, says that "this little boy, he must have come from the banquette, and was going to cross the street, and I think the lamp of the automobile struck him." Another witness for defendant, Galy, says "this little boy was standing on this side of Johnson street; the doctor was on the lower side, and he ran across the street, looking towards the patrol wagon, and not bothering about the automobile or anything else, and when he found himself in front of the automobile it looked like he fell back a little and the doctor ran this way, and he ran into the machine." Another witness for defendant, Mrs. Blanchard, one of the occupants of the automobile, says:

"The child was on the sidewalk, and he just crossed over right in front of the automobile, when it struck him."

Defendant himself says he was blowing his horn "in order to get an opening sufficient to go through this immense crowd that was there at the corner, and didn't see the boy until he was struck."

From this evidence we conclude that the child was at first going straight down the banquette on the uptown side, and that, when he got about the middle of the block, he slanted to the right, in the direction of the patrol wagon, which was at the downtown corner, so that his course and that of the automobile tended to converge. We find nothing to show that his course was squarely across the street. Therefore, had the defendant been duly observant, as any one using a death-dealing machine upon a public street is bound to be, he would have noticed that the course of the boy was convergent with his own, and that the boy was not paying attention. True, if the boy was running, there may have been very little time for stopping or shunting the machine; but the defendant should have

been observant and allowed the child this chance for the saving of his life. Crisman v. Shreveport Belt R. R. Co., 110 La. 640, 34 South. 718, 62 L. R. A. 747. Defendant's whole attention evidently was centered upon getting an opening through the crowd ahead; he became unmindful for the moment of the danger to which he might be exposing those who, like himself, from the same cause of the excitement ahead, might be in his way upon the street.

There can be no question of contributory negligence in the case. Cases of persons going upon railroad tracks have no analogy. The boy's attention was fixed upon the excitement ahead of him; as everybody else's was. He was simply following others who had just preceded him, going in the same direction. If he had thought of the matter at all, he would have had the right to assume that an automobile or other fast-moving private vehicle would not run him down.

But if there was contributory negligence, still the defendant would be responsible, under the last-chance doctrine, for had he been looking (as he was legally bound to be doing) he would have seen the boy, and seen that he was unaware of the danger into which he was going. Possibly it would, even then, have been too late; but defendant should have been sufficiently attentive to have been in a position to make the trial.

One thing is certain that the boy did not know that the machine was so near. Combining the testimony of the witnesses who say that the boy was "standing" in the street with that of Mr. Galy, that, "when he found himself in front of the automobile, it looked like he fell back a little," we would conjecture that a toot of the machine attracted the attention of the boy and checked his course, and that just then he was run over. In other words, that the tooting of the machine was not continuous, as one uninterrupted blowing, but consisted of successive tootings at short intervals; and that the quickly moving ma-chine passed from the lower to the upper side of the street in the interval between two blowings.

This would account for the boy's not having heard. His not having seen is accounted for by the machine having been behind his back. The innate sense of self-preservation would have checked him, had he either seen or heard; hence, our assuming that he did neither.

Plaintiffs claim $25,000 damages, distributed, as follows: For the loss of the society and affection of their child, and the future assistance and support they might expect to receive from him, $5,000; for the sufferings of the child, $5,000; for their own suffering, mental as well as physical, $10,000; punitory damages, $5,000.

There is no evidence of the child having suffered. His skull was so badly fractured that an operation was deemed inadvisable. From this we infer that he was unconscious and insensible from the moment of the blow.

Mr. Burvant testifies that the death of his boy has made "a wreck of his life"; that for nearly nine months he was "physically incapable of attending to my business, because to me life was not worth living." Mrs. Burvant is less exaggerated in her statement. She says that it made her "very nervous"; that for 15 days she was sick in bed, just getting in and out of bed, from nervous prostration. The plaintiffs are 44 and 45 years old, and the child was their youngest. How many more they had, the record does not show. Whether they were healthy, ordinarily constituted people, or of so nervous a temperament that a stroke of this kind would affect them to a greater extent than ordinary people, the record does not show.

The jury, who saw them on the witness stand, allowed them $1,500. This was by a divided vote of nine for and three against.

The moderation of this allowance was doubtless responsive to a sentiment on their part that Dr. Wolfe was more unfortunate

than culpable in this sad affair; as is in truth the case. The liability is more legal, or, we might say, technical, than moral. We realize this fully; at the same time there is a legal liability, and $1,500 is not commensurate.

The feelings of a parent, especially of a mother, on such an occasion, are not susceptible of exact computation in dollars and cents; if an estimate were attempted, it would doubtless exceed the fortune of Dr. Wolfe. The physical suffering of plaintiffs we hardly can take into consideration alongside of their so incomparably greater mental suffering.

In the case of Buechner v. City of New Orleans, 112 La. 600, 36 South. 603, 66 L. R. A. 334, 104 Am. St. Rep. 455, where the court allowed $6,000, there was no question raised in connection with the amount allowed by the jury, and the court simply affirmed the verdict.

In the case of Sundmaker v. Yazoo & Mississippi Valley R. R. Co., 106 La. 111, 30 South. 285, the court allowed $4,000.

Considering all the circumstances of the case, we have concluded to fix the amount in this case at $3,000.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be increased to $3,000, and that, as thus amended, it be affirmed.