## WYBLE et ux. v. PUTFORK.*
### No. 14154.

Court of Appeal of Louisiana. Orleans.
May 16, 1932.

John May, of New Orleans, for appellant.

Stanley McDermott and John C. Moulin, both of New Orleans, for appellee.

HIGGINS, J.

The plaintiffs, as parents, bring this action ex delicto to recover damages for the death of their minor son, Eldridge, age 12 years, who was alleged to have been run down and killed by an automobile owned and operated by the defendant on St. Bernard avenue, this city, on Sunday, November 16, 1930, at about 5:30 a. m.

The charges of negligence against the defendant are that he was operating his car at an excessive, reckless, and negligent rate of speed, in violation of the provisions of the city traffic ordinance, and that either he was asleep, or nodding, and therefore not keeping a proper lookout while driving his car.

Defendant answered denying that he was in any way at fault and pleading contributory negligence.

There was judgment in favor of the plaintiffs for the sum of $4,000, and the defendant has appealed. Plaintiffs have answered the appeal and asked that the amount of the award be increased.

Our appreciation of the facts of the case, as we gather them from the voluminous record, is that plaintiffs resided at 1332 St. Bernard avenue, which is a two-way paved thoroughfare 55 feet in width, running from the river to the lake. Their two minor sons, Cleveland, age 11, and Eldridge, age 12, were altar boys at one of the Catholic churches. The sisters connected with a Catholic institution loaned plaintiff, Gustave Wyble, a small Ford truck for the purpose of driving some of the sisters to a special mass that was to be held early Sunday morning, the day of the accident. Plaintiffs' two sons were to act as altar boys on the occasion. Wyble and the two boys arose at about 5 o'clock in the morning and attempted to crank the truck, but it would not start due to the fact that a heavy rain had fallen during the night and the ignition system was damp. At 5:30 a. m., for the purpose of starting the motor, they pushed the truck out of the yard into the street in the direction of the river, Cleveland being on the right rear side, or towards the sidewalk, and Eldridge on the left rear side, and the father on the left side at the point where the steering wheel is located. The truck's headlights and two rear lights, one red and one white, were burning. They had pushed the truck about 45 feet along the street 6 feet from the uptown gutter curb when suddenly, without any warning or signal, the defendant's Dodge sedan, 1927 model, crashed into the left rear side of the truck, crushing Eldridge and knocking the truck forward about 50 feet, and continuing on its course to the opposite or downtown side of the street, where it mounted the sidewalk curbing and struck a post on the sidewalk, a distance of 75 feet from the point of impact. There were four occupants in the defendant's car, himself and three companions. Two of the young men left the scene of the accident immediately after it happened. Defendant and one of his companions assisted the father and neighbors in placing the injured boy in the automobile, and he was taken to the Charity Hospital, where he died two hours later.

The evidence of the plaintiffs consisted of the testimony of two disinterested eyewit-

*Rehearing denied June 27, 1932.

nesses, the police office who came upon the scene immediately after the accident, a woman and two men who lived in the immediate neighborhood, the father and mother and the boy, Cleveland Wyble. Their evidence tends to show that the truck was about 5 or 6 feet from the uptown gutter curbing at the time it was struck; that the headlights and rear lights were burning; that the accident happened about 5:30 a. m., or daybreak; that it had rained the night before, and that it was misty at the time the accident occurred, but that one could see by the natural light for a considerable distance, clear vision being further augmented by the street lights; that defendant's car was running at an excessive rate of speed, some of the witnesses estimating it as high as 40 or 45 miles an hour; that defendant failed to sound his horn, or give any warning of his approach; that the impact was very severe, the truck being driven 50 feet up the street and the Dodge car continuing on its course a distance of 75 feet, mounting the sidewalk curbing and coming to rest against a post. There is some evidence tending to show that the defendant fled from the scene of the accident and was brought back by a passing motorist, and also that he admitted he was nodding and did not see the truck, or those pushing it.

Defendant's evidence consisted of the testimony of his three companions and himself to the effect that they had been playing poker from 10 o'clock at night until 4:30 in the morning in a room provided for that purpose by a restaurant some fifteen blocks from the scene of the accident; that defendant had drunk two bottles of "home-brew" and had eaten two sandwiches about 1:30 a. m.; that St. Bernard avenue is a wide two-way paved street, about 55 feet in width, with no trees or obstructions along it; that at that time of morning, about 5:20, there was no traffic; that the Dodge sedan was a 1927 model, its brakes being in perfect condition, with headlights of standard type and burning; that the defendant was driving the car and was in full possession of his faculties; that the Dodge was being driven at about 15 or 18 miles an hour; that the defendant discovered the presence of the truck when he was 10 or 12 feet from it, applied his brakes, and swerved to the left in an attempt to avoid it; that he did not sound his horn or give any warning of his approach; that it was drizzling and extremely dark at the time; that his headlights gave him a range of vision of about 20 or 25 feet in front of him; that the truck was to the right, or uptown side of the center of the street, along which course the Dodge was traveling, and that there were no lights on it; that the Dodge car, after striking the truck a glancing blow with its right side, crossed to the left or downtown side of the street, a distance of about 30 feet from where the impact took place; that defendant took the injured child to the hospital.

We experience little difficulty in coming to the conclusion that defendant was operating his automobile at a rate of speed in excess of 20 miles an hour, and, therefore, in violation of the provisions of sub-section "b" of section 1 of article 2 of Ordinance No. 7490, C. C. S. The testimony of the witnesses, as well as the movements of the car and truck after the accident, are very definite proof of that fact.

Defendant's own evidence convicts him of the charge of failing to keep a proper lookout because he admits that he had lights on his car which were effective for a distance of 20 or 25 feet, but that he did not discover the presence of the truck until he was within 10 or 12 feet of it. He offers no explanation why he did not see the truck sooner, except that it was very dark and misty, and that the truck had no lights on it, but the other evidence in the case preponderates to the effect that both the headlights and the rear lights of the truck were burning, and that it could be seen for a considerable distance at that time of morning without the assistance of any artificial light. Defendant was either asleep, or nodding, or not looking, or not paying any attention to where he was going.

A careful examination of the evidence in the case convinces us that the plaintiffs have proved by a preponderance of the evidence that the defendant was operating his automobile at an excessive rate of speed, in violation of the city traffic ordinance, and that he was not properly and carefully observing the road in front of him.

The plea of contributory negligence is based upon the ground that the lights on the truck were not burning, as required by the provisions of the traffic ordinance, and that, as the truck would not run and required emergency repairs, it should have been brought to the nearest intersecting street for that purpose, so as not to impede traffic, as also required by the traffic ordinance, and that, under the general law, undertaking the starting of the truck in the middle of the street by pushing it was negligence on the part of plaintiff and his minor son.

Since we have found as a fact that the lights on the truck were burning, we need not give any further consideration to that issue. It is unnecessary for us to decide whether plaintiff and his son were technically violating the ordinance by attempting to start the truck by pushing it, when the engine failed to respond to cranking by hand, because, even conceding that there was a technical violation, but without deciding that point, it is our opinion that the sole and proximate cause of the accident was the negligence of the defendant. Whether the plaintiff and his son were guilty of negligence under the general law in attempting to start the truck on the street is of no moment, because their action in doing so did not contribute to the accident.

In any event, defendant, according to his own testimony, had the last clear chance of avoiding the accident, because, if he did not see the truck, he was required to have seen it and to have used proper precaution to avoid running into it. If he was going only 15 or 18 miles per hour, as he says he was, he could have avoided striking the truck, for he admits he discovered its presence when he was 10 or 12 feet away. As the road was clear, he easily could have driven to the left and avoided the accident. Bushnell v. Bushnell, 103 Conn. 583, 592, 131 A. 432, 435, 44 A. L. R. 785; Huddy on Automobiles (Sixth Ed.) § 307, p. 360; Parlongue v. Leon, 6 La. App. 19; Pepper v. Walsworth, 6 La. App. 611; Raziano v. Trauth, 15 La. App. 650, 131 So. 212; Southall v. Smith, 151 La. 967, 92 So. 402, 27 A. L. R. 1194.

Counsel for defendant relies on the cases of Woodley & Collins v. Schusters' Wholesale Produce Co., Inc., 170 La. 527, 128 So. 469, and Holcomb v. Perry, 19 La. App. 11, 138 So. 692, contending that these two cases modify the doctrine stated by this court in Parlongue v. Leon, 6 La. App. 19 and Raziano v. Trauth, 15 La. App. 650, 131 So. 212. We are of the opinion that Woodley & Collins v. Schusters' Wholesale Produce Co., supra, is in accord with the two decisions of this court requiring a motorist, who is driving an automobile at night, to keep it under proper control so as to be able to stop within the range of his headlights, the court particularly saying that no hard and fast rule could be announced on the subject, and that each case must be considered upon its own circumstances.

The case of Holcomb v. Perry, supra, is not in point, because the court there found as a fact that the defendant's truck did not have any light on it, and that the truck, the piling, and the equipment used in loading it completely blocked the highway, and that the plaintiff, who was driving his car at a reasonable rate of speed, observed the obstruction as soon as it was possible for him to have done so, and that he did everything reasonable and proper to bring his car to a stop; and, further, that, being confronted with a sudden emergency created by the negligence of the defendant, plaintiff's conduct in attempting to pass to the left of the obstruction was not negligence.

Defendant's learned counsel strenuously argues that the doctrine of comparative negligence is established by article 2313 and paragraph 13 of article 3556 of the Revised Civil Code, and that the courts of this state should recognize that doctrine in assessing damages, citing Burvant v. Wolfe, 126 La. 787, 52 So. 1025, 29 L. R. A. (N. S.) 677, and Rice v. Crescent City R. R. Co., 51 La. Ann. 108, 24 So. 791. As we understand the language of those cases, we do not believe that the Supreme Court recognized and applied the doctrine of comparative negligence, the court holding, in effect, that the quantum in each case must depend upon the facts and circumstances of each case. It is our opinion, as expressed in Mathes v. Schwing, 11 La. App. 9, 123 So. 156, that the doctrine of comparative negligence is not recognized in this state, and, before we would apply that doctrine, there would have to be a definite expression of opinion by our Supreme Court giving effect to it.

It is claimed by the defendant that the award below was excessive, and that it should be reduced, and the plaintiff contends that the award was inadequate, and that it should be increased. The boy was twelve years of age and was badly crushed, and while, at first, he was unconscious, he regained consciousness in the hospital, where it appears that he suffered excruciating pain. He lived for two hours. He was a normal, healthy child in the sixth grade at school. Plaintiffs had five children, three boys and two girls, the deceased being the eldest. The awards by our courts in matters of this kind vary according to the circumstances in each case. The average amount allowed for a child twelve years of age, where there are two parents, is about $5,000, but taking into consideration the increased purchasing power of the dollar, which the court has a right to take judicial cognizance of, we have concluded not to disturb the amount allowed by our learned brother below. Jacoby v. Gallaher, 12 La. App. 477, 126 So. 86, and cases therein cited. See, also, Hebert v. Baton Rouge Electric Co., 150 La. 957, 91 So. 406, 25 A. L. R. 245; Weekly v. La. Western R. R. Co., 129 La. 791, 56 So. 889, Ann. Cas. 1913B, 798; Burvant v. Wolfe, 126 La. 787, 52 So. 1025, 29 L. R. A. (N. S.) 677; Rice v. Crescent City R. Co., 51 La. Ann. 108, 24 So. 791; Drago v. Dorsey, 13 La. App. 115, 126 So. 724; Ziegler et al. v. Lamantia, 13 La. App. 70, 126 So. 262; Ledet et al. v. Lockport Power & Light Co., Inc., 15 La. App. 426, 132 So. 272.

For the reasons assigned the judgment appealed from is affirmed at the cost of appellant.

Affirmed.