JANVIER, Judge.
The accident from which this suit results took place at about 3:45 o’clock in the afternoon on April 20, 1965, on Veronica Drive, in St. Bernard Parish, when a *96 four and a half year old boy attempted to run across the street just as a car driven by Mrs. Eileen Martinez, wife of Julian Martinez, was approaching.
Claudio Morettini brought this suit on behalf of the child, claiming $75,000 for the child and claiming on his own behalf $1112.-66 as the cost of medical and other expenses made necessary by the accident.
The defendants are Mrs. Martinez, the operator of the car, her husband, Julian Martinez, and State Farm Insurance Company, the liability insurer of Mr. and Mrs'. Martinez.
It is charged that, as Mrs. Martinez was approaching the point at which the accident occurred, the bpy ran from behind an ice cream truck which was stopped on one side of the street, and that the approaching car was being driven at a dangerously high rate of speed, that the operator should have realized that the ice cream truck would be attractive to young children and that there probably would be children in the rear of it obtaining ice cream from the vendor.
The defendants contend that the speed of Mrs. Martinez’ car was not excessive, that, in fact, she had reduced it to about 10 or 15 miles an hour because of the approach from the other direction of another automobile and that the street was so narrow that the two cars could not pass in the roadway left between the parked cars on both sides.
There was judgment against all defendants in favor of Morettini on behalf of the child in the sum of $3750 and in his favor for $470.16. All defendants have appealed.
In addition to Mrs. Martinez, the driver of the car, there were three eyewitnesses of the occurrence, Mrs. Robert A. Smith, Mrs. Marlene Laye and Mrs. Virginia McFadden. Mrs. Smith was a neighbor who lived across the street from the Morettinis. She says that she saw the Martinez car when it was 100 feet from the point at which the accident occurred; that it was approaching at an excessive rate of speed, 25 to 30 miles an hour; that, as the child ran across the street, the car struck him, and that “the child flew in the air” and “went approximately 24 feet.”
Mrs. Laye, also a neighbor who lived across the street from the Morettinis, says that she was sitting at her front window talking to Mrs. Smith, and that she did not see the approaching car until she heard Mrs. Smith scream. She says the boy “was thrown up in the air” and “landed” under a parked car on the other side of the street. She says that he was thrown about 10 feet.
The other eyewitness, Mrs. McFadden, was approaching from the other direction —in other words, opposite to that from which Mrs. Martinez was driving her car. She says that the passageway between the two lines of parked cars was so narrow that she realized that she could not pass the car of Mrs. Martinez, which was approaching from the other direction; that it was “creeping” and “going extra slow” so that she became a little vexed at being delayed as she was anxious to get home, having left something on the stove. She says that she is not certain whether the car of Mrs. Martinez struck the boy at all. She says “the child did pass in front of her car * * * he was running.” She was asked: “Did any part of the car touch that boy”? and she said: “Just the tire.”
Mrs. Martinez says that she was driving her car slowly and that just as she was about to reach a point alongside the ice cream truck, the little boy ran out from behind it directly across in front of her car. She says that she did not know and does not know now whether she hit him at all. She applied her brakes, but did not skid, and then drove on for about two car lengths to find a place at which she could park her car without blocking traffic.
We feel certain that Mrs. Smith and Mrs. Laye could not have seen all that they claim to have seen and that the statement *97 of Mrs. Smith as to the speed of the Martinez car was in error as the record convinces us that it was stopped immediately and did not skid.
No one claims that the little boy could have been. seen before he left the protection afforded by the ice cream truck, and, except that the ice cream truck is, of course, attractive to children, there was nothing to lead Mrs. Martinez to realize that anyone might run across directly in front of her car.
For many years, in fact, as early as 1910, in the case of Burvant v. Wolfe, 126 La. 787, 52 So. 1025, 29 L.R.A.,N.S., 677, the Supreme Court of Louisiana considered the question of liability for the results of accidents such as this, and held that the operator of an automobile must.be on the alert and must notice anything which might indicate the probability of a child running into the street, if there is anything which might give warning of such a possibility to a prudent driver. This rule has been followed from that time to the present time. However, in every case it has been held that there must be something which might indicate to the driver of the approaching car the possibility of children being present and suddenly making their appearances near the front of the approaching car. In fact, in the three cases especially relied on by counsel for plaintiff the courts said that the rule will be applied only where there is something to indicate the possibility of such an unfortunate occurrence. In Ates v. State Farm Mutual Automobile Insurance Co., La.App., 191 So.2d 332, it was held that:
“ * * * [a] motorist encountering children upon the roadside must anticipate that the very young are possessed of but limited judgment and that their actions are likely to be . sudden, unpredictable and often foolish.”
Obviously the Court meant that there must be something to indicate the presence of children. Note the word “encountering”.
In Guillory v. Lemoine, La.App., 87 So.2d 798, the Court cited earlier cases, referring to the
“ * * '* many cases which have held that when a motorist sees a child of tender years along a highway he must bring his car under such control.” (Note the word “sees”).
In Stamps v. Henderson, La.App., 25 So.2d 305, the Court, referring to a motorist, said:
“ * * * a greater degree of care is required of them when children are seen along the road.” (Note again the words “are seen”).
In Layfield v. Bourgeois, 142 So.2d 799, the Court of Appeal for the Third Circuit recognized the rule as to the possibility of children suddenly placing themselves in positions of danger, referring to the boy who was struck, said:
“ * * * it is understandable why he was not seen * * * ”
and then said:
“In the instant case, the evidence not only leaves room for the presumption, but actually shows, that the sole cause of the accident was the action of the child. * * * ”
We feel, as our Brothers of the Third Circuit felt when they said, that “the sole cause of the accident was the action of the child.”
In Sciortino v. Songy, 198 So.2d 422, recently decided by this Court, we said that the defendant motorist “ * * * did not have any knowledge that there was any likelihood that a child might run into the street; he did not and could not see the boy until he darted from behind the parked automobile when it was too late to take any steps to avert the accident.”
We are not impressed by the testimony of Mrs. Smith who said that the boy had been catapulted 24 feet nor are we impressed by the statements of Mrs. Laye made when she was recalled to the witness stand *98 and stated that after the accident she had several times seen Mrs. Martinez drive her car past that same spot and that she “was stiil driving what I considered fast.” If this statement was admissible, and we have grave doubt on this point, all it does is evidence a determination of Mrs. Laye to assist the plaintiff in his attempt to recover damages.
This record leaves no doubt at all that there were no other children who could be seen in the immediate vicinity. Mrs. Smith said that her child had been back of the ice cream truck earlier, but had left.
All witnesses agree that the child ran across the street and was not catapulted 24 feet into another car on the side of the road.
It is our conclusion that Mrs. Martinez was not at fault; consequently, the judgment appealed from is annulled, avoided and reversed and the suit of plaintiff is dismissed at his cost.
Reversed.