## ZIEGLER ET AL. v. LAMANTIA

(February 17, 1930. Opinion and Decree.)
(March 10, 1930. Rehearing Refused.)
(May 5, 1930. Writ of Certiorari and Review Refused by Supreme Court.)

John D. Miller, of New Orleans, attorney for plaintiffs, appellants.

Arthur Landry, of New Orleans, attorney for defendant, appellee.

JANVIER, J. Plaintiffs are the father and mother, respectively, of Sterling K. Ziegler, a 12-year-old boy, who died as the result of injuries received when, at about 7:35 at night, a bicycle on which he and another boy were riding was in collision with a Dodge coupe automobile, owned by defendant and driven by his minor son.

The accident took place on Magazine street, between 50 and 100 feet below the intersection of Valence street.

The facts, as they appear in the testimony, differ, to a large extent, from the allegations in reference thereto, as we find those allegations in plaintiff's petition, but, as no objection was raised by defendant to the testimony offered by plaintiffs at variance with the petition, we

are not concerned with the case as alleged in the pleadings, but need only determine the question of whether the evidence sets forth a case of liability.

It may be well, however, to set forth the allegations of the petition, which are at variance with the proof.

In the petition it is charged that defendant's automobile was being driven "out Valence Street toward Magazine Street, from the direction of the Mississippi River, with the intention of turning downtown on Magazine at Valence Street. * * *" The evidence shows that the automobile at no time had been on Valence street, but had for several blocks been proceeding down Magazine street.

Another allegation in the petition which we are unable to understand is contained in paragraph 4, which reads as follows:

"That about 7:30 or 7:35 P. M. petitioner's son, Sterling K. Ziegler, twelve years of age, was on a bicycle on Magazine Street, between Valence and Cadiz Streets, which bicycle was near the lake or wood side curbing of said Magazine Street, which section of Magazine Street is intended for the use of vehicles traveling uptown."

Since the bicycle was traveling downtown and not uptown, it appears that this allegation is, in effect, an admission that the bicycle was being ridden the wrong way, or against traffic.

The true facts, as we gather them from the record, are that the little boy was sitting on the frame of the bicycle, which was being propelled by the other boy, who was older, and who was sitting on the seat; that the bicycle had for some time been following a downtown bound street car, and was being ridden between the two rails of the downtown street car track; that the street car had stopped to discharge passengers on the lower side of Valence street; that the Dodge coupe was also following the street car, and that it pulled to its left in an effort to pass the street car. Up to this point there is no material conflict in the testimony.

Plaintiffs contend that the bicycle had pulled to the left also, and that when the automobile, traveling at high speed, made its maneuver to the left, it crashed into the bicycle, and then skidded across the lakeside portion of Magazine street, and only stopped when its left front wheel struck the lakeside curb.

Defendant, on the other hand, maintains that the rider of the bicycle gave no intimation of his intention to turn to the left until the Dodge coupe had already turned to its left, out of the car tracks, and had reached a point alongside the bicycle, and that, when the two vehicles were side by side, the bicycle then turned to its left, and the driver of the coupe then turned further to his left and put on his brakes in an effort to prevent the bicycle from striking the side of the automobile.

The witnesses, for plaintiffs, in addition to the older boy, were a Mr. Falcon, who was driving his automobile up Magazine street, and who saw the Dodge turn suddenly to its left and crash into the sidewalk; a Mr. Pell, who was standing on the corner at which the street car had previously stopped; a Mr. Roser, who was on Magazine street about 75 feet from the crossing; a Mr. Boone, who was conductor of the street car, and who states that he looked around and saw the automobile hit the bicycle from the rear; and a Mrs. Valenti, who was on the uptown lake corner of Magazine and Valence streets. We find it very difficult to deter-

mine from the evidence just exactly what actually occurred, but the one significant fact which stands out is that the automobile of defendant was unquestionably approaching the bicycle from the rear and at an unusual speed. This is shown by the testimony of various witnesses. Mr. Pell, to whom we have referred, with reference to the sound made by the application of the brakes of the automobile, said:

"Q. How long did that noise of brakes last?
"A. I could not say positively, but I heard it make a terrible racket. After it happened, I stepped the distance from the time he put his brakes on until the time he stopped. It was around between forty and forty-five feet, something like that."

Mr. Roser noticed the skid marks made by the automobile and on this subject testifies:

"Q. Do you remember how long a distance along the pavement those marks were?
"A. Well, I guess about forty or forty-five feet."

Mrs. Valenti stated that what called her attention to the automobile was the squeaking of the brakes and the crash into the sidewalk.

Boone, the conductor of the street car, who manifestly had nothing to call his attention to the automobile except the noise which it made, stated:

"After we were about a car length from the corner I heard an automobile skid, turned around and I saw the boys fall down and the automobile roll over one of them."

As we have stated, it is very difficult to determine just what the boys on the bicycle were doing immediately prior to the collision, but it is admitted by the driver of defendant's car, his minor son, that he saw the bicycle with the two boys on it. It is also in evidence that the street car had stopped, and it is therefore reasonable to assume that the boys were proceeding around the left side of the street car just as the defendant's automobile was doing. Under these circumstances the driver of defendant's car owed to the young boys the highest degree of care. See Burvant vs. Wolfe, 126 La. 787, 52 So. 1025, 29 L.R.A. (N.S.) 677; Moore vs. Vance, 4 La. App. 353; Albert vs. Munch, 141 La. 686, 75 So. 513, L.R.A. 1918A, 240.

It is very evident that the driver of the Dodge coupe was not exercising the care required under the circumstances. Seeing the two boys on one bicycle in front of him, or somewhere near the path which his automobile must traverse, it was his duty to reduce his speed to a minimum and to keep his attention constantly focused on the boys. This he did not do, and, as a consequence, his father, the owner of the automobile, is liable.

It is impossible to determine accurately just what damage parents sustain whose minor children are killed. We believe that, in view of the age of the boy, an award of $2,500 to each of the parents is consistent with awards by this and the Supreme Court in similar cases.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be, and it is, annulled, avoided, and reversed, and that there now be judgment in favor of plaintiffs and against defendant in the sum of $2,500 to each, with interest from judicial demand, and for all costs.