### COMMERCIAL CASUALTY INS. CO. v. LANDRY.*
### No. 14585.

Court of Appeal of Louisiana. Orleans.
March 12, 1934.

F. Carter Johnson, Jr., of New Orleans, for appellant.

John May, of New Orleans, for appellee.

HIGGINS, Judge.

Plaintiff, a compensation insurance carrier for the New Orleans Blue Print & Supply Company, as legal subrogee, under paragraph 2 of section 23 of Act No. 85, p. 126, of 1926, and section 7 of Act No. 247, p. 468, of 1920, brings this action against the defendant to recover the sum of $222.45 covering medical expenses and workmen's compensation paid to Raymond Martino, the injured employee, alleging that he had been hurt as a result of the negligence of the defendant.

The petition alleges that Raymond Martino, sixteen years of age, was employed as a delivery boy and, on November 10, 1930, about 10:00 a. m., was riding on his bicycle up South Claiborne avenue on the left-hand side of the roadway; that defendant was driving her Chevrolet coupé in the same direction with three other automobiles driving abreast of her car and going in the same direction; that the boy was overtaken by these automobiles near the intersection of Erato street; that, as the wheels of the bicycle struck the railroad tracks which cross South Claiborne avenue, they skidded, due to the wet and slippery condition thereof; that the boy was riding about one foot from the curbing of the neutral ground, and as a result of the skidding movement was thrown from his bicycle about two feet from the neutral ground into the path of the on-coming car of the defendant; that, while attempting to arise from the pavement defendant's car struck him, dislocating his left hip, and causing bruises and lacerations; and that he was taken to the Charity Hospital, and subsequently removed to the Baptist Hospital, where he was treated.

The charges of negligence against the defendant are as follows: First, that she was not driving her car in a careful and prudent manner; second, that she was not looking ahead and taking precautions for others up-

*Rehearing denied April 23, 1934.

on the street; and, third, that she was driving too close to the boy under the attending circumstances, and that she had ample opportunity to have avoided striking the boy by either stopping or swerving and failed to do so.

The father of the boy intervened claiming damages for personal injuries in behalf of his minor son, reiterating the allegations of negligence contained in the plaintiff's petition.

Defendant filed an exception of no right or cause of action in so far as the petition of intervention was concerned. The trial court sustained the exceptions, and the intervener has not appealed.

Defendant answered denying that she was in any way at fault, averring that she sounded her horn repeatedly to warn the boy of her approach, and that as she neared the bicycle it skidded causing the boy to suddenly fall into the street, directly in her path; and, in the alternative, pleaded contributory negligence on the ground that the boy was violating the provisions of paragraph 2 of article 8 of the City Traffic Ordinance, No. 7490, C. C. S., which required him to ride his bicycle on the right side of the street, and in refusing to turn out of the defendant's path in order to give her an opportunity to pass to his left; and in riding his bicycle so carelessly and in such disregard of the condition of the street as to cause it to skid and precipitate him directly in the path of her approaching automobile.

There was judgment dismissing the suit, and plaintiff has appealed.

There is substantially little difference between the testimony of the boy and the defendant, except that she states that she sounded her horn, and he testified that he did not hear it. She described the accident as follows:

"On the 10th of November, about a few minutes after ten in the morning, it was a drizzling rain, or, at least, if it was not raining at that time, it had just stopped, and I was riding up South Claiborne Avenue going towards Carrollton, and we were stopped by a train there at the New Basin and Carrollton, and when the train pulled out there was at least, well, three or four cars abreast, and I was the first car in the front to the extreme left hand side of the street. I rode a block or two or about a block and a half, something like that, and all of a sudden it seemed like, out of nothing, came a little boy on a bicycle. I don't remember exactly whether it was a block and a half or a block.

It was near Erato Street, anyway. He also was on the extreme left hand side of the street, near the curb, and there is the levee of the curb of about six or eight inches on the neutral ground, and he was about·two feet, possibly from this neutral ground, and I blew. I realized that I had to go on, and I didn't—I was afraid he would turn, I didn't know which way he would go, so I blew. My first thought was to turn to the right, but because of the congestion I could not do that, so I blew once or twice, and he looked back and kind of smiled, and I thought, 'He is turning in to the left at Erato,' which he did not do.

"When he entered the intersection, there is a railroad crossing, and he went there and was facing that part of the street, a kind of curbing in the street, and his bike, whether it hit the railroad track or a shell or the side of the curbing, I don't know what happened, but anyway, he fell in front of me this boy on the bicycle, and I was going at a rate of speed between 12 and 15 miles an hour, and I stopped as soon as I could, but, of course, the street being slippery, I could not stop immediately. You know, if you did, you would bump into the other automobiles. So I stopped as soon as I possibly could.

"Meantime I stopped just as I had rolled up on, I suppose—over his bicycle, and the boy and all, and I heard him call—heard him holler.

"Just about that same time—the time I stopped—the other cars, of course, they stopped, too, because I had stopped, to see what happened, I presume, and there were two men—I don't know where they came from. They came and lifted my front wheels up and pulled the boy and the bicycle from under the car, and we put him in their car or tried to, because of it being a small coupe, his injuries would not permit him to sit comfortable in that car, so this negro chauffeur who had a big car came over and offered to put this boy in his car, and bring him to the hospital, which he did, and I went straight to the police station, I believe it is the Twelfth, and made a report of the accident."

On cross-examination, Mrs. Landry testified as follows:

"Q. Did you blow your horn to give any signal of approach? A. I did because there were so many other cars going along abreast that I would have to have ample space because of the congestion, and it was raining too. I thought I would blow my horn to let him take notice that there were more people coming and he would get out of the way so

that we could go on, and he looked back and laughed and went on. So when I got to Erato, that is a one way left turn street, I said, 'Maybe the reason he is staying on the extreme left hand side is that he expects to turn there.' But he did not. When I got just past Erato Street, his bike skidded and he fell broadside on the path of my car and could not get up. I was too close,—I don't know how many feet from it at the time he fell—about eight feet, something like that. He could not get up. I was too close. I was going maybe 10 or 15 miles an hour, something like that, approximately. It was raining and we could not go fast."

The only other eyewitness to the accident was Mrs. Josephine Stinson, who testified in behalf of defendant. She states that she was driving her automobile three or four feet to the rear of the defendant's car at the rate of speed of about twenty-five miles per hour; that the right side of the road was congested because three other automobiles were driving abreast; that the boy was riding on the extreme left side of the road adjacent to the neutral ground curbing and going in the same direction as all of the automobiles were; that the wheels of the bicycle struck the wet railroad tracks, skidded, and caused the boy to fall into the path of the defendant's oncoming car, and that she (the witness) stopped her car without striking the defendant's car.

In the case of Bosarge v. Spiess & Company (La. App.) 145 So. 21, a ten year old boy was riding a bicycle a few feet from the right-hand curbing on White street. A truck was going in the same direction, and was about seven feet further out in the roadway from the curbing than the boy was. The truck was overtaking the boy from the rear when the child, due to the fact that there was an automobile parked near the curbing on the right side, turned slightly to the left in the path of the on-coming truck which struck the bicycle and killed the boy. In rendering judgment in favor of the plaintiff we said:

" * * * The truck driver, seeing a young boy so near to the path of the truck, before attempting to pass, should have made certain that the boy's attention was directed to the approach of the heavier and more dangerous vehicle and he should have so reduced his speed as to have made it possible to stop, even if at the last moment the boy ahead should, in his excitement, do the unexpected and turn towards the path traversed by the truck. * * *

"Therefore, not only was it dangerous, per se, for the truck to attempt to pass so close alongside the boy, but it was a direct violation of the above-quoted provision of the ordinance for the driver to make the attempt without giving the necessary warning.

"While boys ten or eleven years of age of normal intelligence are presumed to know and appreciate the danger of riding bicycles or playing in city streets, they cannot be expected to exercise the same degree of prudence as would be exhibited by an adult, and a person driving such an automobile in close proximity to a child is negligent in not expecting that the child may do the unexpected and dart suddenly into danger."

In the case of Ziegler et al. v. Lamantia, 13 La. App. 70, 126 So. 262, 264, a twelve year old boy was riding on the frame of a bicycle which was being propelled by another boy. The bicycle for some distance had followed a street car going down town and was between the rails of the street car tracks. The defendant in his Dodge coupé was following the bicycle. The street car stopped to discharge passengers, and the bicycle was turned to the left in order to pass the street car, and about the same time the defendant drove the Dodge car in the same direction striking the bicycle and causing the death of the boy. In holding the defendant liable, we said: "It is very evident that the driver of the Dodge coupé was not exercising the care required under the circumstances. Seeing the two boys on one bicycle in front of him, or somewhere near the path which his automobile must traverse, it was his duty to reduce his speed to a minimum and to keep his attention constantly focused on the boys. This he did not do, and, as a consequence, his father, the owner of the automobile, is liable."

In Albert v. Munch, 141 La. 686, 75 So. 513, 515, L. R. A. 1918A, 240, two small boys, ten and twelve years old, respectively, were riding in a toy wagon which they tied to the rear of an ice wagon. Defendant's automobile overtook them and was about to pass when the toy wagon swerved from its course and was struck by the automobile. The court said:

"There is no suggestion in the record that there was any other vehicle on the street that interfered or threatened to interfere with them, and all that they had to consider was how not to run over the boys. The first precaution that should have been taken was to give warning of their approach, and defendant says that the horn was blown at once. * * * The next precaution should have been to slow down the automobile, so that in

no event or situation that was conceivable to its occupants could they kill the boys. * * * They were then so close to the boys that, in view of the thing that happened, they could not have avoided the accident if they had slowed down to 6 miles an hour or less; and the thing that happened was, in our opinion, something which any reasonable man, who is permitted to operate so dangerous a machine as an automobile in the principal street of a large city, should have foreseen and provided against.

"* * * Common prudence should have suggested that it was a dangerous thing * * * to pass them within 3 feet at the rate of 10 miles an hour."

In Kelly v. Ludlum, 9 La. App. 57, 118 So. 781, it was held (syllabus): "The driver of an automobile, when approaching a pedestrian walking in the same direction must not drive so close to the pedestrian that a deviation of two feet by the pedestrian would cause an accident. This danger must be anticipated by the driver."

See, also, Burvant et al. v. Wolfe, 126 La. 787, 52 So. 1025, 29 L. R. A. (N. S.) 677, Giangrosso v. Schweitzer et al., 10 La. App. 777, 123 So. 127.

In the light of the above authorities we shall turn to a consideration of the evidence. She admits the boy was plainly in view for over a block before she overtook him. At that time there were three other automobiles driving abreast of her which gave her a very narrow part of the road in which to pass the bicycle and the other cars. She elected to attempt to pass him under circumstances which would require her to drive very close to the boy. She knew that the street was wet and the tracks slippery, which would have a tendency to cause the rubber tires of the bicycle to skid. We believe that as a reasonable and prudent driver she should have anticipated that the bicycle might skid. She was following entirely too close to him under the dangerous conditions that obtained. Prudence and care required her to place her car either under such control that she could instantly stop it or to await a more favorable opportunity in order to drive around the bicycle. Furthermore the boy did not give any signal that he was going to turn to his left, and defendant in assuming that he might do so was merely guessing. We conclude that she was at fault.

With reference to the plea of contributory negligence the evidence tends to show that on account of the presence of a number of automobiles the boy was compelled to drive to his left. The boy did not have an opportunity to drive his bicycle to the right for the purpose of permitting the defendant to pass due to the presence of other automobiles on the roadway. There is nothing in the record to show that the boy was carelessly riding the bicycle—its skidding was unavoidable. But even if he was violating a provision of the traffic ordinance by driving on that side of the street, the defendant had him in plain view for over a block, and therefore his presence on that side of the roadway was not a contributing cause of the accident, because the defendant had it fully within her power by the use of care and caution to avoid injuring the boy. The plea of contributory negligence is without merit.

As the evidence shows that the boy suffered a dislocated left hip, bruises, and lacerations which confined him to the hospital for some considerable period of time, it is conceded by the defendant that the amount claimed here is not in excess of what would be a fair and reasonable award for damages for personal injuries to the boy.

For the reasons assigned the judgment appealed from is annulled, avoided, and reversed, and it is now ordered that there be judgment in favor of plaintiff, Commercial Casualty Insurance Company, and against the defendant, Mrs. Maude S. Landry, in the full sum of $222.45, with legal interest thereon from judicial demand until paid and for all costs.

Reversed.