## KAHN v. SHREVEPORT RAILWAYS CO. et al. *

### No. 5049.

Court of Appeal of Louisiana. Second Circuit.

June 4, 1935.

Wise, Randolph, Rendall & Freyer and J. N. Marcantel, all of Shreveport, for appellants.

Isaac Abramson, of Shreveport, for appellee.

MILLS, Judge.

Highland avenue runs north and south and is a main thoroughfare in the city of Shreveport. It is a four-lane street, 36 feet wide. The two middle lanes are almost wholly taken up by the double tracks of the Shreveport Railways Company, which operates, by means of trolley, a street railway on it. The two side lanes, unoccupied by the tracks, have each a width of 10.65 feet. The overhang of a street car reduces the clearance to about 9 feet. Columbia avenue crosses Highland, but the intersection is not coincident. That part of Columbia west of Highland is about 90 feet south of its eastern continuation. Hereafter, in speaking of Columbia avenue, we refer to the southernmost in-

*Rehearing denied July 15, 1935.

tersection. About 60 feet south of it, on the east side of Highland, is a 20-foot alley which does not continue on the west side. A few feet from each corner of this alley, on the east side of Highland, motor vehicles were parked, a milk truck on the south and a Packard automobile on the north.

On February 12, 1934, at about 3 o'clock in the afternoon, Bobbie Kahn, 8½ year old son of plaintiff, was riding his bicycle north on the east side of Highland avenue toward the above-described location. His destination was a block north of Columbia avenue. The handle bars of his machine were of such unusual width that there was not room for the bicycle to safely go between the parked automobiles and a street car passing on the east track. As Bobbie approached the parked milk truck, he was being overtaken by one of defendant's cars. Its motorman sounded his whistle, but Bobbie did not hear it, did not look around, and gave no positive indication of having heard it. He passed out around the truck in safety, continued on, and as he was about to pass the Packard, the street car overtook him, hit his handle bar and knocked him to the pavement. The rear wheel of the car passed over and severed a part of his left foot. His father, on account of the injury, in this action is demanding of Ed Jacobs, receiver for the railways company, individually, $1,000 for medical and hospital expenses, and for the benefit of his son $24,000 for permanent injury, pain and suffering, embarrassment, and loss of earning power.

The case was twice tried by jury. The first disagreed; the second awarded the father the amount prayed for, individually, and $5,000 for the benefit of the minor son. From the judgment in accord with this verdict, defendant has appealed, and plaintiff has answered, asking an increase to $10,000 in the amount allowed for the son's benefit.

The acts of negligence alleged upon are, failure to keep a proper lookout, or to give a warning signal, excessive speed, and the attempt to pass the boy when there was obviously not room to safely do so.

After denying all allegations of negligence, defendant makes the defense that the accident was caused by the fault of the boy in leaving a place of safety and attempting to ride between the automobile and street car; in failing to notice the approach of the car or heed the warning signal, and in heedlessly riding into the side of the car. That if not the sole cause of the accident, these negligent acts contributed to it.

We are satisfied that the speed of the car, around 12 miles per hour, was not excessive, and in any event, that it was not a proximate cause of the accident. Also, that the whistle was blown and not heard, and that the motorman was not justified in taking it for granted that it was heard.

The motorman testifies that, though the boy did not look around, he thought he had heard the whistle because he "put on a little more speed," and went around the milk truck about 20 feet ahead of the street car. That after passing the truck the boy cut back toward the curb and slowed up so that he thought his intention was to go up the alley or stop. That he did not see the boy after the front of the car passed him, and took it for granted that he had stopped; that immediately after he heard the noise back of him, made by the bicycle colliding with the side of the car. It is defendant's contention that when the front of the car passed the boy he was in a place of safety by the curb, but that after it had passed, back of the motorman's field of vision, the lad cut to his left and ran into the side of the car before it came alongside of the parked Packard. He is positive that the boy was not struck by the front end of the car.

In this he is largely corroborated by two young lady passengers, one of whom was riding on the front seat on the right of the middle aisle, and one next to the aisle on the second seat on the opposite side from where the accident happened. We do not see how the second witness, aged 15, obtained a clear view of the occurrence from her position. She says that Bobbie shot out from the curb as if attempting to cross the street. The other young lady, a college student, says that she saw the boy veer in to the sidewalk as if about to stop, and that after the front of the car passed him, she "glanced around and saw the child start between the street car and the parked automobile." That the car and the bicycle collided back of where she was sitting.

The two witnesses in the best position to see the accident were a lady in, and the driver of, a taxicab following behind the bicycle and the street car. The lady says that she saw the bicycle pass the truck, and that it continued on without veering materially to the right. She lost sight of it for an instant. That it continued on and was caught and struck by the front end of the car when Bobbie was between the car and the Packard. She says of the space between the parked automobile and the street car:

"It did not look wide enough for the child to pass through, and evidently it was not, because the car caught up abreast of him, yet it did not stop."

The driver says that he saw the boy caught between the car and the Packard. That the left handle bar came in contact with the side of the street car about two feet back of the front door. He says he saw the boy from the time he passed the milk truck. That he slowed down as if about to stop, but instead kept on and cut to the left to pass around the Packard, where he was caught by the street car.

It is shown that there are marks on the street car just back of the front door that could have been made by the handle bar.

■ The case presents only issues of fact which were decided by the jury in favor of plaintiff. We would not be justified in disturbing this finding unless it is patently erroneous. We do not so find it. The motorman had the whole situation before him. It was apparent that if both the car and the bicycle kept on they would probably collide when passing the Packard. The motorman was aware of this imminent danger; the boy was not. The motorman had sounded his whistle; the boy had given no positive indication of having heard it. We are satisfied that the boy, before passing the milk truck, had been, for safety, riding close to the curb. He cut out to pass the truck and then veered in again toward the curb, and out again to pass the Packard. The motorman, from this veering, wrongly took it for granted that the boy intended to stop, and continued on with the car, the inevitable collision resulting.

■ It is well settled in our jurisprudence that extreme care is required of the driver of a vehicle approaching children in the street.

■ In the case of Albert v. Munch, 141 La. 686, 75 So. 513, L. R. A. 1918A, 240, our Supreme Court held:

"A person who drives so dangerous a machine as an automobile through the principal street of a large city, upon a bright, dry day, and who sees, at a distance of 150 feet in front of him, two boys, ages 10 and 12 years, respectively, trailing in a soap box wagon behind an ice wagon, should take such precautions in his driving as that, in no event or situation, conceivable to an intelligent man, will he run over and kill the boys."

We think this doctrine applies to street car motormen, and with greater force in this case where the danger was not only conceivable, but plainly impending.

■ A driver has not the right to assume that children of tender years will exercise the discretion needed to protect them from the dangers of traffic. He must anticipate childish heedlessness on their part. Brown v. Wade (La. App.) 145 So. 790; Jacoby v. Gallaher, 10 La. App. 42, 120 So. 888; Moreau v. So. Bell Tel. & Tel. Co. (La. App.) 158 So. 412; Ziegler v. Lamantia, 13 La. App. 70, 126 So. 262; Nelson v. Crescent City Ry. Co., 49 La. Ann. 491, 21 So. 635.

In Bosarge v. Spiess & Co. (La. App.) 145 So. 21, the court said:

"It is not contended that during that time the boy indicated in any way that he was aware of the approach of the truck, and we feel that the truck driver, seeing a young boy so near to the path of the truck, before attempting to pass, should have made certain that the boy's attention was directed to the approach of the heavier and more dangerous vehicle and he should have so reduced his speed as to have made it possible to stop, even if at the last moment the boy ahead should, in his excitement, do the unexpected and turn towards the path traversed by the truck."

In that case the boy, not quite 11 years old, was riding a bicycle approaching a parked automobile and being overtaken by a truck. The facts are strikingly similar to those in the present case.

In the light of these authorities, it is plain that the defendant's motorman fell far short of discharging his legal duty when he took it for granted that Bobbie would stop. Considering the situation confronting him, he should not have attempted to pass until he knew what the child would do.

Undoubtedly, Bobbie should have heard the signal and should have looked behind before changing his course to pass the automobile. The necessity for so doing would have been apparent to an adult, or perhaps an older child.

■ A bright child of 8½ years is capable of contributory negligence. Downey v. Baton Rouge Electric & Gas Co., 122 La. 481, 47 So. 837; Lynch v. Knoop, 118 La. 611, 43 So. 252, 8 L. R. A. (N. S.) 480, 118 Am. St. Rep. 391, 10 Ann. Cas. 807. But his conduct is not governed by the same rule which applies to an adult. He is only required to exercise that care which is expected of a child of like age, intelligence and experience. Westerfield v. Levis, 43 La. Ann. 63, 9 So. 52; Restatement of the Law of Negligence, § 283, E, p. 743.

Applying this test, we do not find that Bobbie's failure to hear or heed the signal amounted to negligence.

We therefore find the judgment imposing liability correct.

### Quantum of Damages.

As to the quantum, there is an admission in the record that the medical and hospital expenses total $1,000.

Bobbie's foot was badly crushed and mangled. The entire bottom was laid open, exposing the bones, nerves, and tendons. A number of the bones were crushed. The great and the second toe back to the ankle are missing. The third is markedly deformed. The ball and arch are gone, making it permanently necessary for him to walk on the outside of the foot, throwing the weight of his body off center. While there will be a readjustment, he will always limp, be unable to play active games or engage in an occupation requiring standing or walking. He suffered great pain due to the crushed and gangrenous condition. He was confined to the sanitarium a little over a month, was in bed an additional two months, and on crutches for five or six more. Naturally a nervous child, this characteristic has been greatly increased by the shock. He is now talkative, jumpy, and emotional. It is not certain that this condition will improve.

Considering these injuries, we find the allowance of $5,000 neither inadequate nor excessive.

The judgment appealed from is accordingly affirmed.