McMORRIS, for Use of McMORRIS, v.
GRAHAM.

No. 1758.

Court of Appeal of Louisiana. First Circuit.

Nov. 6, 1937.

H. M. English and Dudley L. Weber, both of Baton Rouge, for appellant.

Roland C. Kizer, of Baton Rouge, for appellee.

OTT, Judge.

Dempsey McMorris, plaintiff's 11 year old son, had both bones of his left leg broken, and sustained other injuries on July 26, 1936, when defendant's automobile struck the boy on St. Louis street in the city of Baton Rouge. The suit is for $5,000 damages on behalf of the boy, and for the sum of $166 medical, hospital, and drug bills incurred by plaintiff on account of said injury.

The case is here on an appeal by the plaintiff from a judgment rejecting his demands. The trial judge, in a carefully written and well-considered opinion, discussed and analyzed the facts, and reached the conclusion that plaintiff had failed to prove negligence on the part of the defendant. We are asked to review the facts and reach a different conclusion.

The issues are correctly stated by the trial judge as follows:

"Plaintiff alleges that on the 26th day of July, 1935, the defendant, Donald Graham, negligently drove his automobile over his said minor son, severely injuring and crippling him, breaking both bones in his left leg and inflicting other injuries. * * *

"The plaintiff alleges that at the time of the accident his said son, Dempsey McMorris, was running a 'scooter' south on St. Louis Street; that his said son was on the right side of said street against the banquette, when the defendant who was traveling south in his automobile, on St. Louis Street, at a high rate of speed struck said Dempsey McMorris 'while he was standing against the banket on right side of said street.'

"The plaintiff filed an amended and supplemental petition somewhat changing the allegations of his original petition as to the manner in which the accident occurred. Paragraph II of the supplemental petition reads as follows: 'Your petitioner further shows as set out in paragraph 3 of his original petition, that his

said son was riding a "scooter" going south on the right side or west side of St. Louis Street when he was in about the middle of the block, he ran into the blanket and was just getting ready to stop or had stopped when the car of Donald Graham ran against him and knocked him down and drug him or rolled him more than twenty feet from where he struck his said son and left his said son in the street with both bones of his left leg·broken and unconscious and bleeding.'

"For answer to the original and supplemental petitions filed by the plaintiff, defendant admitted the accident, but avers that when the boy was struck he was running his 'scooter' in the middle of the street and not on the right hand side of the street.

"Defendant avers that he turned into St.' Louis Street at the intersection of St. Louis and Government Streets, which is approximately a block and a half from the place where the accident occurred; that he was traveling south on the right or west side of St. Louis Street at a slow rate of speed; that he was driving in a careful and cautious manner and that he maintained a proper lookout; that as he was traveling down said street, he observed plaintiff's son operating a scooter near the middle and slightly to the right of the center line of St. Louis Street; that when he saw the said minor he immediately sounded his horn to notify the boy of his approach, and thereafter, at intervals, continued to sound his horn to make sure that the boy would be aware of his approach; that the boy turned his head and observed the approach of defendant's automobile but continued to operate the 'scooter' south on St. Louis Street, whereupon, traveling at a rate of speed of between ten and fifteen miles an hour, he proceeded to go around the boy on the left, but that as he approached alongside of the boy, the boy either fell from the 'scooter' or turned to his left and ran into the side of defendant's automobile; that feeling the impact, he pulled his car further to the left and to the east curb of St. Louis Street when he stopped and observed the child lying in the middle of the street.

"Defendant avers that the accident was due to the negligence of the minor which defendant says consisted in the fact that the boy who was operating· the scooter in the middle of the street, turned to the left and ran into the automobile or fell of the 'scooter' on to the automobile.

"Defendant pleads in the alternative the contributory negligence of the minor."

The greatest conflict in the testimony revolves around the most vital points in the case, i. e., the place in the street where the boy was struck, the speed at which defendant was traveling, the manner in which the boy was struck, and whether or not defendant gave any alarm when overtaking the boy.

On the first point, the decided preponderance of the evidence is to the effect that the boy was struck near the center, or slightly to the right of the center, of the street. It appears that the street at the point of the accident is 30 feet wide. This indicates that the boy was struck from 12 to 15 feet east of the west curb. The plaintiff, his son, the boy's mother, and a negro man, say that the boy was around 3 feet from the west curb when· struck. The defendant and several disinterested witnesses testified that the accident occurred near the center of the street. The trial judge found that the impact occurred near the center of the street, and we think the evidence fully supports his finding on this point.

In fact, we ·can hardly see how the boy could have been struck near the west curb, as he was near the center of the street when picked up.' If ·the boy had been hit within 3 feet of the· west curb, either on the right front or on the right side of the car, it is reasonable to believe that he would ·have been knocked further toward the west curb rather than toward the center of the street. Of course, it is possible that the boy could have been caught in the mechanism of the car and dragged. over toward the center of the street some 10 or 12 feet, but there is no evidence in the record to support this hypothesis.

As to the speed of defendant's car just prior to and at the time of the accident, the evidence is not very clear. The defendant says that he turned into St. Louis street from Government street, and as he turned south on St. Louis street the boy was about a block and a half ahead of him near the center of the street; that he was going about 25 miles per· hour coming down the street behind the boy on the scooter; that as he approached the boy he. slowed down to 10 or 12 miles per hour, turned to his left to pass the boy on the

left, and as he passed the boy he was going between 8 and 10 miles per hour. The boy's father says that the defendant was coming down the street at least 45 or 50 miles per hour, and his mother says the speed was not less than 50 miles per hour.

A witness called by defendant, Mr. Gillingham, says that defendant was going about 30 miles an hour when defendant passed witness some 150 feet from the accident; that he slowed down for the boy. The car went about 30 feet after striking the boy, and from this fact, taken in connection with the other evidence, we think defendant must have been going faster than he says, or thinks, he was, but not as fast as the boy's father and mother say he was going. There were no other cars on the street at the time, the view was unobstructed, and, in the absence of any showing as to the speed limit at this point, we cannot say that defendant was going at an excessive rate of speed under the circumstances.

Plaintiff has failed to prove that the accident happened as he alleges in his petition; that is, that "defendant ran against the boy near the banquette on the west side of the street, knocked him down, and drug him more than 20 feet." The defendant's version as to how the accident occurred is more plausible under the evidence. He says that as he turned to the left to pass the boy and was alongside of him the boy either turned the scooter into the right side of the car, or else the boy fell into that part of the car; that he saw the boy as soon as he turned into St. Louis street, and had his car under perfect control, and when he blew his horn before attempting to pass, the boy turned his head as though he heard the signal. We find, as did the trial judge, that the evidence and the physical facts justify the conclusion that the boy either ran or fell into the right side of defendant's car as the car was passing on the left.

Defendant says he blew his horn when within a block or half block of the boy; that the boy turned his head back over his shoulder in answer to the signal to pass. The evidence is conflicting, most of it negative, as to whether or not defendant blew his horn before attempting to pass the boy. The only positive evidence on this point is that given by defendant himself and that given by the boy's mother; the former saying he did blow his horn, and the latter saying he did not. One witness says he heard a horn blow three times, but could not tell whether it was defendant's horn or that of some one else. The other witnesses who testified on this point, including the boy's father, merely say they did not hear any horn. The boy himself says that he saw the car behind him when it was within 25 feet of him; that he tried to get to the curb, but was struck and remembers nothing further about the accident.

■ A motorist passing children playing or riding on the streets is required to use proper care in giving the necessary signals, in bringing his car under control, and in anticipating the unusual and impulsive actions characteristic of persons of immature years. This rule implies that when the motorist sees a child or young person on the street ahead of him, he must be ready to guard against an unexpected and sudden movement on the part of the child calculated to endanger the child's safety, and the motorist must anticipate that young persons will not always act to protect themselves from danger as will a mature adult under the same circumstances. 2 Blashfield's Cyclopedia of Automobile Law and Practice (Permanent Edition) p. 540, § 1501 and § 1502, p. 544; Albert v. Munch, 141 La. 686, 75 So. 513, L.R.A.1918A, 240; Guillory v. Horecky, 185 La. 21, 168 So. 481; Cimo v. Karstendiek (La. App.) 173 So. 548.

■ But the motorist is not the insurer of the safety of children playing or riding in the street. If the motorist has used all reasonable precautions to avoid an accident, and the sudden act of the child creates an emergency rendering it impossible for the motorist to avoid hitting the child, the accident is said to be unavoidable, and there is no liability. 2 Blashfield's Cyclopedia of Automobile Law and Practice (Permanent Edition) page 532, § 1498; Rodriquez v. Abadie (La. App.) 168 So. 515.

■ As we have previously observed, the defendant was not driving behind the McMorris boy at an excessive speed under the circumstances, and the boy was in plain view ahead. The evidence indicates that defendant gave a signal to pass, and the boy turned his head, which would indicate to the trailing motorist that the boy would not suddenly turn to his left or fall from the scooter. The defendant had a right to pass to the left of the boy after

giving the signal, and was not required to anticipate that the boy would suddenly run or fall into the right side of the car, with ample room on the right side of the street for the boy to continue his course along the street. To say that it was the duty of the motorist to come to a stop until the boy got out of danger would be equivalant to saying that defendant could not pass the boy at all, as the driver could never anticipate when the boy might swerve or run into the side of his car. We do not find that the trial judge was in error in reaching the conclusion that the defendant was not guilty of negligence.

The accident being unavoidable, there is no occasion to consider the plea of contributory negligence set up by defendant in the alternative, nor the doctrine of last clear chance invoked by plaintiff.

For the reasons assigned, the judgment is affirmed.