## CANTRELL et al. v. H. G. HILL STORES, Inc.

### No. 17189.

Court of Appeal of Louisiana. Orleans.

Jan. 22, 1940.

Claude J. de Baroncelli and Alcide J. Weysham, both of New Orleans, for appellants.

Rosen, Kammer, Wolff & Farrar, of New Orleans, for appellee.

JANVIER, Judge.

Mr. and Mrs. Gustave Cantrell are the parents of two minor children, Seymour, a boy aged ten years, and Angel, a daughter, aged twelve, who, on January 18, 1938, at about 5:15 p. m., received bodily injuries as the result of an accident which occurred on the lake side driveway of South Claiborne Avenue, a short distance below the corner of Josephine Street.

The two children were riding on a one-seated bicycle belonging to the boy, who was on the seat and who was propelling it, the girl, Angel, being seated in front of the boy on the bar which extends from a point just below the handlebars to a point just below the seat. They were proceeding in an uptown direction and were some five or six feet from the curb on the right as a motor-truck owned by defendant corporation, H. G. Hill Stores, Inc., and driven by an employee, Clarence Matthews, admittedly acting within the scope of his employment, and also going in an uptown direction, overtook and attempted to pass them on their left.

It is alleged by plaintiffs, who bring this suit on behalf of their said children, that the driver of the truck, without giving warning of its approach, drove it at ex-

cessive speed and struck and wantonly ran down and injured the two children.

It is admitted by defendant that the horn of the truck was not sounded as it approached, but it is contended that there was no necessity for any warning, as the truck was sufficiently to the left of the bicycle to pass safely, and it is further contended that, in fact, it had almost passed, when suddenly the bicycle either swerved, or slid to its left, throwing the two children to the ground alongside the passing truck.

Defendant maintains that the truck was being driven at a lawful and reasonable speed and that there was no carelessness on the part of its employee and asserts, further, in the alternative, that if its employee was guilty of any of the acts of negligence charged, the true cause of the accident was the contributory negligence of the two children in riding on a single-seated bicycle in violation of paragraph 11 of Article X of traffic ordinance No. 13,702 of the City of New Orleans, which provides that it shall be unlawful for the operator of a bicycle, or of a motorcycle, "to carry any other person upon the handle-bar, frame, or tank of any such vehicle, or for any person to so ride upon such vehicle", and also in violating paragraph 17 of the same Article, which provides that "bicycles shall not be ridden * * * in public streets except close to the right hand curb".

In the court below there was judgment dismissing plaintiffs' suit and they have appealed.

Although plaintiffs allege that the bicycle was actually struck from the rear by the truck and attempted, in the district court, to so prove, their counsel in this court devoted himself principally to the task of convincing us that, even if the bicycle slid or swerved into the side of the passing truck, the defendant should, nevertheless be held liable because of the asserted negligence of their driver in attempting to pass too close to the bicycle and in not giving warning of the approach of the truck so that the children on the bicycle might have swerved to their right and thus afforded an even greater clearance between the bicycle and the truck; and they contend, too, that even if there was no contact between the bicycle and the truck, or between the children and the truck, still the defendant should be held liable since, they argue, the children were probably frightened by the approach of the truck, which, without any warning, came so close alongside them.

Of course, if the truck struck the bicycle or the children as it approached from the rear, there need be no further consideration given to the record because, surely, one who, acting within the scope of his employment, runs down, from the rear, children so situated, renders his employer liable even though the children may themselves be negligent, or be acting in violation of some provision of a traffic ordinance.

■ But the record abundantly justifies the conclusion reached by our brother below that "* * * the front of the truck had passed them and, as the back wheel was passing, the bicycle fell against the truck". We feel it unnecessary to refer in detail to the evidence on this point since it is manifest that the judge below was not in error in so concluding.

■ There is no foundation whatever for the charge that the truck was being driven at a speed of 45 miles per hour, the evidence overwhelmingly showing that it was proceeding at between 15 and 25 miles an hour, and showing, also, that even though the driver did not actually see the accident and knew of it only when he heard the noise near the rear of the truck, he brought that vehicle to a stop only 18 or 20 feet beyond the point at which the children and the bicycle were lying in the street; and before we leave this point we merely refer to the gross exaggeration of the two children, one of whom says that the truck proceeded 99 feet beyond the point of impact and the other of whom testifies that it did not stop for half a block.

Plaintiffs also alleged that the brakes of the truck were defective and that, therefore, the vehicle could not be brought to a stop promptly. But the record contains absolutely no evidence in corroboration of this allegation.

The evidence is quite convincing that, as the truck and the bicycle were proceeding, the bicycle was several feet to the right of the truck, and it follows that, if both had proceeded without swerving, the truck would have passed safely at least three or four feet to the left of the bicycle.

Matthews, the driver of the truck, says the bicycle was about four or five feet to his right.

John Wilcher, a disinterested pedestrian saw the occurrence. He states that, as the truck passed, it was "something like three or four feet" to the left of the bicycle.

It is true that the two children said that the truck struck them from the rear, the boy stating that "a truck coming along without blowing its horn knocked me down and ·stopped a half a block away". But it appears that, immediately after the occurrence, the ·boy made a statement to the police to the effect that the wheel of the bicycle got caught between the railroad track and skidded and fell against the truck. The railroad track to which the boy referred crosses that side of Claiborne Avenue from the neutral ground to the yard of an industry located in the next block above Josephine Street, and it was therefore necessary that both the bicycle and the truck cross these rails, the tops of which are flush with the surface of the street.

It is obvious, we think, that largely responsible for the accident was this railroad track. The bicycle was crossing it just as the truck was passing the bicycle. We have no doubt that the truck would have passed safely by had not the front wheel of the bicycle become involved with the rails of this track with the result that the bicycle was diverted from its direct line apparently towards the side of the truck. We think it was diverted towards the truck and not away from it because, had it been diverted away from the truck, the children and not the bicycle would have fallen toward it, whereas the evidence rather convinces us that the front wheel of the bicycle went under the truck and was run over by the right rear wheel thereof.

Under these circumstances we must consider whether it can be said that the cause of the accident was any negligent act on the part of Matthews, the driver of the truck, and particularly whether his failure to sound his horn can be pointed to as having had causal connection with the unfortunate ensuing event.

Counsel for plaintiffs maintain that, under the traffic ordinance of the City of New Orleans, there was a duty in Matthews to sound his horn regardless of whether or not the bicycle was in front of the approaching truck, or to one side of it. We assume that counsel bases this argument on the provisions of Article I, paragraph 3(b), of ordinance No. 7490, C.C.S., which reads as follows: "An operator overtaking and desiring to pass a vehicle shall signal with his horn, and the operator of the vehicle so overtaken shall promptly, upon such signal, turn his vehicle as far as is reasonably possible to the right to allow free passage on the left of his vehicle."

In the first place, we do not find that the particular ordinance from which we have quoted has been referred to in the petition, or introduced in evidence. In the second place, it is very obvious that the framers of the above quoted provision did not intend to require that the horn of every vehicle be sounded whenever its driver intends to pass a vehicle which is already sufficiently far to the right. It is quite plain that the purpose of the above quoted provision was to give to the overtaking vehicle the right to require the vehicle ahead to swerve to the right in order to afford a path in which the overtaking vehicle might pass.

It is true that in Bosarge et ux. v. Spiess & Co., et al., 145 So. 21, 22, we stated that "it was a direct violation of the above-quoted provision of the ordinance for the driver to make the attempt without giving the necessary warning". But what we meant was that, under the facts of that case, the driver of the overtaking vehicle should have given warning of his approach in order to have the boy turn out of his path.

When we consider the question of whether or not Matthews was negligent in not sounding his horn, we think it important that the record shows that there was a great deal of other traffic on the street. This is in accord with the common knowledge that on Claiborne Avenue—one of the principal traffic arteries of the City—at that time in the evening the traffic is unusually heavy. It necessarily follows that the children knew that these other vehicles were on the street, going in the same direction in which they were going, and they must have known that they could not safely swerve to their left, as obviously, some of these other vehicles must have been in that lane of traffic. Since they had such knowledge, we cannot see that the sounding of the horn of defendant's truck would have served any useful purpose since it would only have warned them of something which they already knew. In fact, the sounding of a horn might have confused and frightened them. Obviously, then, the failure of Matthews to sound the horn of the truck was not the cause of the swerving of the bicycle, and manifestly, also, had it been sounded, it would not have prevented them from swerving.

■ Nor can it be said that the truck driver should have anticipated that they would turn to the left, or that their bicycle might be deflected by contact of its front wheel with the rail of the track. To have swerved voluntarily would have constituted the grossest negligence in view of the number of other vehicles and it is shown that the rail is flush with the surface of the street, and from the photographs it appears that there was nothing about its appearance so unusual as to have caused the driver of the truck to anticipate any such accident.

Counsel for plaintiffs direct our attention to various cases involving facts somewhat similar to those before us and insists that these cases and others are authority for the view that it is negligence for the driver of a vehicle to attempt to pass alongside young persons in the street, either on foot or on bicycles. They point to Ziegler et al. v. Lamantia, 13 La.App. 70, 126 So. 262, Lambert v. Cire et al., La.App., 179 So. 112, and Bosarge et ux. v. Spiess & Co. et al., supra, each of which grew out of an accident to a minor on a bicycle and in which the minor was injured by an overtaking vehicle. In each of these cases it was held that the driver of the overtaking vehicle was at fault, but in each of them it appeared that the circumstances were such as to indicate plainly to the driver of the vehicle that the child on the bicycle intended to swerve into the path of the vehicle.

In the Ziegler case there were two boys on a bicycle. They were following a street car. An automobile going in the same direction was attempting to pass to the left of the street car just as the street car was being brought to a stop. We said that it was evident that the boys on the bicycle must turn to their left to go around the street car [13 La.App. 70, 126 So. 263]: "It is also in evidence that the street car had stopped, and it is therefore reasonable to assume that the boys were proceeding around the left side of the street car just as the defendant's automobile was doing."

Under those circumstances, of course, the driver of the automobile should have noticed that the boys would probably turn to their left into the path of his automobile.

In the Bosarge case there was no other traffic on the street and it was plainly dangerous for the truck driver to pass closely alongside the bicycle without giving warning of his approach since, in the absence of other traffic, the young bicyclist had no reason to ride in a straight path, and, furthermore, as we found, in all probability there was a vehicle at the curb on the right, around which it was obvious that the bicyclist would find it necessary to turn. We said: "* * * the boy turned in order to avoid striking the stationary automobile ahead of him. The truck driver should have appreciated the necessity for the boy's action in turning and should have anticipated that he would do so."

In the Lambert case the young boy on the bicycle found it necessary to turn to his left around a stationary car in the street. We said [179 So. 115]: "* * * it should have been apparent to Cire, approaching in the rear, that the boy must alter his course to pass around that car."

■ Here there was no stationary vehicle, or other obstruction ahead of the child on the bicycle, and, therefore, Matthews was not negligent in not anticipating that they might swerve from their course.

Another case relied upon by plaintiffs and involving an accident to a boy on a bicycle is Kahn v. Shreveport Railways Company et al., La.App., 161 So. 636. But here is found a bicyclist who was overtaken by a larger vehicle—a street car—under circumstances which made it obvious that there was not room for the bicycle between the side of the street car and an automobile parked at the street curb.

■ Counsel rely, also, upon the principle that, where one operating a large and dangerous agency discovers another person in peril and realizes that the other person is unaware of the peril, it is the duty of the former to avoid the latter. This is a sound principle of law, but it has no application here because the children were not in peril and would have sustained no injury had they continued on their course.

We think that the facts in the case at bar make applicable the rule followed in McMorris, for Use of McMorris, v. Graham, La.App., 176 So. 630, 632. It is true that, in the McMorris case, the approaching automobile driver gave a signal, which we have found in this case was not necessary. There the court said: "* * * The defendant had a right to pass to the left of the boy after giving the signal, and was not required to anticipate that the boy would suddenly run or fall into the right side of the car, with ample room on the right side of the street for the boy to continue his course along the street. To say that it was the duty of the motorist to come to a stop

until the boy got out of danger would be equivalent to saying that defendant could not pass the boy at all, as the driver could never anticipate when the boy might swerve or run into the side of his car."

We conclude that the defendant's driver was not negligent, and, consequently, that the judgment in defendant's favor was correct.

It necessarily follows that the claim of the Board of Administrators of the Charity Hospital of Louisiana in New Orleans cannot be sustained.

It is therefore ordered, adjudged and decreed that the judgment appealed from be and it is affirmed at the cost of appellants.

Affirmed.